## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF VERMONT and THE VERMONT HEALTH PLAN, <br><br> *Plaintiffs*, <br><br> v. <br><br> TEVA PHARMACEUTICALS INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., TEVA SALES & MARKETING, INC., and TEVA NEUROSCIENCE, INC., <br><br> *Defendants*. | **Civil Action No. 22-cv-159-gwc** <br><br><br> **Oral Argument Requested** |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND .................................................................................... 2

ARGUMENT ............................................................................................................ 3

      I.      Teva has not satisfied its burden under 28 U.S.C. § 1404(a). ............................ 4

            A.      The first-filed rule does not apply. ........................................... 4

                  1.      The New Jersey cases were not the first filed cases. ................... 4

                  2.      The New Jersey cases are substantially different. ....................... 5

                  3.      The "balance of convenience" defeats any presumption in favor of transfer. ....................................................... 8

            B.      The Court should decline Teva's transfer request. ................................... 9

                    1.      The Section 1404(a) factors do not support transfer. ................... 9

                    2.      Teva has failed to meet its burden under Section 1404(a). ...................................................................... 14

      II.     There is no reason to stay this case ................................................................ 15

CONCLUSION ...................................................................................................... 15

REQUEST FOR HEARING ................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
474 F. Supp. 2d 474 (S.D.N.Y. 2007), *aff'd* 599 F.3d 102 (2d Cir. 2010) ..............................4

*Country Home Prod., Inc. v. Schiller-Pfeiffer, Inc.*,
350 F. Supp. 2d 561 (D. Vt. 2004) ..........................................................3, 9, 10, 12

*In re Cuyahoga Equip. Corp.*,
980 F.2d 110 (2d Cir. 1992) ..............................................................5, 6

*Dumont v. Corr. Corp. of America*,
2016 WL 1133918 (D. Vt. Jan. 26, 2016),
*adopted* 2016 WL 3129163 (June 2, 2016) ........................................11

*Employers Ins. of Wausau v. Fox Ent. Group, Inc.*,
522 F.3d 271 (2d Cir. 2008) ..................................................................8

*Flint v. UGS Corp.*,
2007 WL 4365481 (N.D. Cal. Dec. 12, 2007)......................................10

*Holley v. Teva Pharm. USA, Inc.*,
2020 WL 4470617 (E.D. Pa. Aug. 4, 2020) ........................................12

*Inn-One Home, LLC v. Colony Specialty Ins. Co.*,
2020 WL 3456823 (D. Vt. June 24, 2020) ....................................5, 6, 8

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
897 F.3d 88 (2d Cir. 2018) ..................................................................13

*Marotto v. Kellogg Co.*,
2018 WL 10667923 (S.D.N.Y. Nov. 29, 2018)......................................6

*In re Mobile Telecomm. Techs., LLC*,
243 F. Supp. 3d 478 (D. Del. 2017) ......................................................8

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
599 F.3d 102 (2d Cir. 2010) ..........................................................3, 9, 14

*Quinn v. Walgreen Co.*,
958 F. Supp. 2d 533 (S.D.N.Y. 2013) ..............................................6, 7

*Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*,
2008 VT 99, 184 Vt. 355 (2008) ........................................................13

*Speedfit LLC v. Woodway USA, Inc.*,
   53 F. Supp. 3d 561 (E.D.N.Y. 2014) ..................................................................10

*Starr Indem. & Liab. Co. v. Brightstar Corp.*,
   324 F. Supp. 3d 421 (S.D.N.Y. 2018) ..............................................................9, 14

*Tate-Small v. Saks Inc.*,
   2012 WL 1957709 (S.D.N.Y. May 31, 2012) .........................................................6

*Tom & Sally's Handmade Chocolates, Inc. v. Gasworks, Inc.*,
   977 F. Supp. 297 (D. Vt. 1997) ...........................................................................9

*Torres v. Kohlberg, Kravis, Roberts & Co L.P.*,
   2021 WL 4267578 (S.D.N.Y. Sept. 20, 2021) .......................................................8

*United States v. Teva Pharmaceuticals USA, Inc*.,
   2021 WL 4132592 (D. Mass. Sept. 9, 2021) .........................................................5

*Volkswagen De Mexico, S.A. v. Germanischer Lloyd*,
   768 F. Supp. 1023 (S.D.N.Y. 1991) .....................................................................14

*Wells Fargo Advisors, L.L.C. v. Tucker*,
   195 F. Supp. 3d 543 (S.D.N.Y. 2016) ...................................................................8

*William Gluckin & Co. v. Intl. Playtex Corp*.,
   407 F.2d 177 (2d Cir. 1969) ...............................................................................4

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*,
   899 F. Supp. 2d 235 (E.D.N.Y. 2012) ...................................................................6

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................*passim*

Vermont Consumer Protection Act, Vt. Stat. Ann. tit. 9, § 2453 ...................................3

**Rules**

D. Vt. L.R. 7(a)(6) ..........................................................................................15

D. Vt. L.R. 83.1 ............................................................................................10

D.N.J L.R. 101.1 ...........................................................................................10

**Other Authorities**

15 Fed. Prac. & Proc. Juris. (4th ed.)..............................................................10, 14

Staff of H.R. Comm. on Oversight and Reform, 116th Cong., Drug Pricing
   Investigation Teva-Copaxone (Sept., 2020) ...........................................................2

## INTRODUCTION

Blue Cross and Blue Shield of Vermont, Vermont's only domestic health insurer, alleges that it overpaid by millions of dollars for Copaxone, the most prescribed therapy for treating relapse-remitting multiple sclerosis (MS). Teva, the company that manufactures and markets Copaxone, has drastically increased its price over the past twenty years. In 1997, an annual course of Copaxone cost $10,000 in the United States. Today, the U.S. price is $70,000—many times the price elsewhere in the world. Teva's illegal and anticompetitive activity in marketing and pricing Copaxone has been exposed by Congressional investigation and is the subject of a lawsuit brought by the United States Department of Justice. ECF No. 1, Compl. ¶¶ 6, 125.

Teva's conduct both took place in Vermont and caused substantial financial harm here. *E.g.*, *id*. ¶¶ 20, 25, 26, 42. Teva marketed and distributed Copaxone here. Its conduct violated Vermont law. *E.g.*, *id*. ¶¶ 273, 283, 293, 297-309. And Vermont consumers and businesses have involuntarily subsidized Teva's illegal conduct by paying higher costs for health care benefits. Indeed, because MS is more common in northern states and its prevalence in Vermont is double the national average, *id*. ¶¶ 48-50, Vermont has been disproportionately harmed by Teva's conduct.

Teva, however, does not want to litigate Blue Cross's claims, including its Vermont state-law claims, in Vermont. Hoping to move this case to its preferred jurisdiction, New Jersey, Teva invokes the so-called "first filed" rule. But lawsuits against Teva were filed in three other jurisdictions—the District of Massachusetts, the Middle District of Florida, and the Western District of Washington—before the cases filed earlier this year in New Jersey. Teva has not moved to transfer or consolidate any of these other cases.

Teva cannot meet its burden under 28 U.S.C. § 1404(a), and its motion should be denied. Teva cannot selectively invoke the "first filed" rule to forum shop, not only because the New Jersey actions were at least the fourth-filed, but also because the parties, facts, and claims at issue in the

New Jersey cases differ substantially. And the relevant factors that govern requests to transfer under 28 U.S.C. § 1404(a) weigh decisively against transfer.

## FACTUAL BACKGROUND

Since Copaxone entered the market in 1997, Teva's annual revenues for the drug have reached as high as $3.5 billion. Compl. ¶¶ 42, 56, 57. It's no secret why: even as its costs declined, Teva increased the U.S. price for an annual course of Copaxone 27 times, from $10,000 in 1997 to nearly $70,000 today. *Id*. ¶¶ 58, 63. In 2015, for example—as prices dropped in other countries and cost 80% less in Europe—Teva increased the U.S. price by 60%. *Id*. ¶ 60.

Teva maintained its monopoly pricing initially by delaying generic competition, including by filing meritless patent suits and multiple unsuccessful FDA petitions. *Id*. ¶¶ 85-101. Even after generics entered the market, Teva prolonged its monopoly pricing—and reaped excessive profits— by suppressing generic competition, as revealed by multiple government investigations. In August 2020, the U.S. Department of Justice sued Teva alleging violations of the Anti-Kickback Statute and the False Claims Act. *Id.* ¶ 122. In September 2020, a House Oversight Committee report disclosed how Teva's revenues were fueled by anticompetitive and illegal conduct. *Id*. ¶ 6.[1]

Among other things, these investigations found that Teva devised schemes to pay for patients' co-pay obligations for Copaxone by giving patients "coupons." The coupons insulated patients from Teva's price increases and removed incentives for doctors and patients to consider less expensive generic options. Providing these coupons or subsidies to Medicare patients violates the Anti-Kickback Statute, Compl. ¶¶ 123-24, so Teva funneled hundreds of millions of dollars through sham non-profits to accomplish the same result. *Id*. ¶¶ 127-148. That allowed Teva to maintain a high list price for Copaxone—inflating the price paid by all payors. *Id*. ¶ 156.

---

[1] Staff of H.R. Comm. on Oversight and Reform, 116th Cong., Drug Pricing Investigation Teva-Copaxone (Sept., 2020), https://oversight.house.gov/sites/democrats.oversight.house.gov/files/Teva Staff Report 09-30-2020.pdf  ("House Report").

Teva also used a "product hop" to suppress generic competition. *Id*. ¶ 157. Teva initially sold Copaxone as a daily 20 mg dose. Just before its market exclusivity for that product expired, Teva got FDA approval for the same drug in a different package: 40 mg three times a week. *Id*. ¶¶ 166-167. Internal Teva documents show that the new dosing regime was intended to avoid generic competition. *Id*. ¶¶ 168-83. Teva engaged in an intense marketing and pricing strategy to switch patients to the 40 mg dose before generic versions of the 20 mg dose were on the market. That prevented pharmacists from automatically substituting the much cheaper generic drugs once they were available. Teva also wielded a different patent to block generic versions of the 40 mg dose—a strategy that worked until 2017, when a federal court invalidated that patent. *Id*.

Based on Teva's anticompetitive, unfair, and deceptive conduct—including its violations of the Vermont Consumer Protection Act, Vt. Stat. Ann. tit. 9, § 2453, and Vermont common law—Blue Cross seeks relief in this Court. Blue Cross seeks to represent a class that includes all private payors for health benefits in Vermont, as well as payors in other states that, like Vermont, allow indirect purchasers to seek damages for anticompetitive conduct. Blue Cross does not assert any claims under New Jersey law.

## ARGUMENT

To overcome Blue Cross's choice of forum, Teva bears a substantial burden under 28 U.S.C. § 1404(a): it must marshal "clear and convincing evidence" to make a "strong case" for transfer. *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 113–14 (2d Cir. 2010). Teva must show that this lawsuit could have been brought in New Jersey—meaning Teva must affirmatively demonstrate that all defendants are necessarily subject to personal jurisdiction in that district. Assessing a transfer request further calls for consideration of a range of factors, including the desirability of a Vermont forum, the parties' interest in prompt disposition, the plaintiff's choice of forum, and the convenience of parties and witnesses. *Country Home Prod., Inc. v. Schiller-*

*Pfeiffer, Inc.*, 350 F. Supp. 2d 561, 570 (D. Vt. 2004). The weight accorded these factors is "left to the sound discretion of the district courts." *William Gluckin & Co. v. Intl. Playtex Corp*., 407 F.2d 177, 178 (2d Cir. 1969); *see also Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.,* 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) ("whether there are circumstances warranting departure from the first-filed rule is committed to the sound discretion of the district court" (cleaned up)), *aff'd* 599 F.3d 102 (2d Cir. 2010).

## I. Teva has not satisfied its burden under 28 U.S.C. § 1404(a).

### A. The first-filed rule does not apply.

The first-filed rule is inapplicable for at least three reasons: (1) the New Jersey cases were not the first filed; (2) the parties, claims, and facts at issue in New Jersey differ substantially; and (3) the "balance of convenience" exception weighs in favor of retaining jurisdiction in Vermont.

#### 1. The New Jersey cases were not the first filed cases.

Teva notes that its rival, Mylan, filed suit in New Jersey on June 29, 2021, and that several direct purchasers and third-party payors filed cases in March 2022. Mot. 3-6. But Teva neglects to inform the court that *multiple* other lawsuits based on Teva's Copaxone misconduct were filed in other jurisdictions prior to *any* of the New Jersey cases:

- **DOJ Litigation (Massachusetts):** The DOJ filed suit in the District of Massachusetts in August 2020 alleging that Teva violated the False Claims Act and Anti-Kickback Statute by using copay assistance programs to induce Medicare to pay for brand Copaxone. *See* Attach. A (Complaint, *United States v. Teva Pharmaceuticals USA, Inc.*, No. 20-cv-11548 (D. Mass. Aug. 18, 2020), ECF No. 1). This same misconduct is raised in Blue Cross's complaint. Compl. ¶¶ 106-156.

- **Humana Litigation (Florida):** The health insurer Humana filed suit in the Middle District of Florida on January 8, 2021, alleging that Teva's manipulative use of copay assistance programs caused Humana's Medicare business to spend money on Copaxone that it would not otherwise have spent, in violation of RICO, state unfair competition laws, and state fraud and deceptive trade practices laws. *See* Attach. B (Complaint, *Humana Inc. v. Teva Pharmaceuticals USA, Inc.*, No. 21-cv-00072 (M.D. Fla., Jan. 8, 2021), ECF No. 1). This same misconduct is raised in both the DOJ Litigation and in Blue Cross's complaint. Compl. ¶¶ 106-156.

4

- **Nationwide Class Litigation (Washington):** The first class action filed on behalf of third-party payors like Blue Cross was filed in April 2021 in the Western District of Washington. King County and the City of Tacoma assert claims under RICO and Washington's Consumer Protection Act based on Teva's: (i) misuse of patent litigation and citizen petitions; (ii) misuse of copay assistance programs to induce purchases of brand Copaxone; (iii) product hop to avoid generic substitution; (iv) misleading lobbying of doctors and patients to write prescriptions with a "dispense as written" notation; and (v) collusion with pharmacy benefit managers and specialty pharmacies to induce sales of Copaxone instead of generics. *See* Attach. C (Complaint, *King County v. Teva Pharmaceuticals Indus., Ltd.*, No. 21-cv-00477 (W.D. Wash., April 8, 2021), ECF No. 1). This was the first case to challenge the broad scope of conduct that is also raised in this case, albeit asserting a RICO claim not present here. Compl. ¶¶ 67-180.

The above cases were filed before any of the New Jersey cases cited by Teva. Indeed, the motions to dismiss in these cases were all fully briefed, if not resolved, before the direct or indirect purchasers filed their class complaints in New Jersey in March 2022.[2]

All of these cases remain pending in the original jurisdictions in which they were filed. Teva did not move to transfer the New Jersey cases to any of the venues in which the earlier-filed cases are pending. Indeed, Teva has been content to allow all of these cases to proceed—for many months—in multiple forums. Teva should not be permitted to invoke the first-to-file rule selectively to choose a favorable forum—which just so happens to be the *fourth*-filed forum.

### 2. The New Jersey cases are substantially different.

"When asked to apply the first-filed rule, a district court must first determine whether the lawsuits at issue assert the same rights, and seek relief based upon the same facts." *Inn-One Home, LLC v. Colony Specialty Ins. Co.*, 2020 WL 3456823, at *2 (D. Vt. June 24, 2020) (cleaned up). "The lawsuits need not be identical, but the claims and rights raised in the two actions must not differ substantially." *Id.* The cases also must involve "identical or substantially similar parties." *In re*

---

[2] *See United States v. Teva Pharmaceuticals USA, Inc.*, 2021 WL 4132592, at *3-7 (D. Mass. Sept. 9, 2021) (denying motion in part); Docket, *Humana Inc. v. Teva Pharmaceuticals USA, Inc.*, No. 21-cv-00072 (M.D. Fla.) (fully briefed as of May 2021); Docket, *King County v. Teva Pharmaceuticals Indus., Ltd.*, No. 21-cv-00477 (W.D. Wash.) (fully briefed as of February 2022).

*Cuyahoga Equip. Corp.*, 980 F.2d 110, 116–17 (2d Cir. 1992). A court "must not . . . be swayed by a rough resemblance between the two suits without assuring itself that . . . the claims . . . are also the same." *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 539 (S.D.N.Y. 2013) (cleaned up).

As an initial matter, neither the Mylan nor the direct purchaser cases qualify. Mylan is Teva's *competitor*, and it alleges lost sales caused by Teva's conduct.[3] Mylan does not bring class claims or represent the interests of health plan payors who overpaid for Copaxone. Thus, Mylan's case does not involve "substantially similar parties," *Cuyahoga Equip.*, 980 F.2d at 116–17, "assert the same rights," or seek the same relief as this case, *Inn-One Home*, 2020 WL 3456823, at *2.

Similarly, the New Jersey direct purchaser action is brought on behalf of a different category of plaintiff: wholesalers in the pharmaceutical distribution chain,[4] who largely pass on any increased costs they incur because of drug manufacturer misconduct to those further down the supply chain, including payors like Blue Cross. *See* Compl. ¶ 75 (addressing formulaic nature of drug pricing, including how prices paid by health plan payors are a fixed percentage of the list price set by drug manufacturers). In the class action context, although courts do not require the same named plaintiff to be involved in both cases, they do generally require that the class in the first-filed case encompass the named plaintiff and class in the second. *See, e.g.*, *Marotto v. Kellogg Co.*, 2018 WL 10667923, at *5 (S.D.N.Y. Nov. 29, 2018) (declining to apply first-filed rule because "the plaintiff classes consist of two distinct groups of consumers, from different states, and between whom there is likely little or no overlap"); *Quinn*, 958 F. Supp. 2d at 539 (same).[5] Because the direct purchaser case

---

[3] *E.g.*, Attach. D at ¶¶ 2, 25 (Complaint, No. 2:21-cv-13087 (D.N.J. June 29, 2021), ECF No. 1).

[4] Attach. E at ¶¶ 13-18, 192 (Complaint, No. 2:22-cv-01232 (D.N.J. Mar. 8, 2022), ECF No. 2).

[5] Teva relies on *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012), but that case addressed the distinct concept of an FLSA opt-in collective action. In any event, the court relied upon the fact that the plaintiffs in the different cases held similar positions with the defendant employer and were encompassed within the scope of the classes in the other cases. *Id. Accord Tate-Small v. Saks Inc.*, 2012 WL 1957709, at *1-3 (S.D.N.Y. May 31, 2012).

seeks to protect the interests of a distinct class of entities that does not overlap with the putative

class in this action—and whose interests conflict with those of the health plan payors—the first filed

rule does not apply. Teva seemingly concedes that the Mylan and direct purchaser cases do not

qualify as "first-filed" cases because in addressing the requirement that cases involve substantially

similar parties, Teva relies only on the third-party purchaser (TPP) case. *See* Mot 8.

The TPP case also does not qualify under the first-filed rule for at least three reasons. First,

no class has been certified in the TPP case and Teva has argued that because the TPP plaintiffs did

not make purchases in Vermont, they do not have standing to represent Vermont payors or bring

claims under Vermont law.[6] That is, Teva's position is that Vermont payors like Blue Cross are not

part of the New Jersey TPP putative class. *See, e.g.*, *Quinn*, 958 F. Supp. 2d at 539 ("Although the

*Guilin* action also seeks certification of a multi-state class that could potentially encompass New

York and Connecticut consumers, no nationwide class has, in fact, been certified in *Guilin*.

Therefore, neither the parties nor the issues in this case are identical to those in *Guilin*."). Teva itself

has thus undermined its position that these cases involve the same parties.

Second, the claims asserted by Blue Cross far exceed those asserted by the TPPs in New

Jersey. The New Jersey TPP case does not assert claims based on either of the following schemes,

which play a pivotal role in the misconduct alleged in the Blue Cross complaint: (i) the use of sham

patent litigation and citizen petitions to delay generic entry; and (ii) the use of an illegal "product

hop" to circumvent drug substitution laws and artificially prolong its patent exclusivity. *Compare*

Compl. ¶¶ 84-101, 157-85, *with* Attach. G at ¶¶ 110-51 (Consol. Complaint, *In re Copaxone

Antitrust Litig.*, No. 2:22-cv-01232, ECF No. 31) (omitting these schemes from discussion of "facts

giving rise to plaintiff's claims"). Although Teva makes broad assertions about the overlapping

_____

[6] Attach. F at 11–16 (Mot. to Dismiss, No. 2:22-cv-01232 (D.N.J. Mar. 8, 2022), ECF No. 41-1).

claims in its motion, *see* Mot. 5-6, it concedes in its Exhibits A and B that the New Jersey TPP complaint omits these claims. ECF Nos. 23-1, 23-2.

Third, the New Jersey TPP complaint targets a much narrower period. The Blue Cross case focuses on conduct beginning as early as 2006 and seeks to certify a class of health plan payors who paid for Copaxone beginning in 2006. *See, e.g.,* Compl. ¶ 251. In sharp contrast, the New Jersey TPP case focuses only on conduct occurring *on or after October 1, 2017*. Attach. G at ¶ 172.

Teva entirely ignores these substantial distinctions in arguing that there exist only "minor differences" between this case and the New Jersey cases. *See* Mot. 8-10. Because the factual and temporal scope of these cases "differ substantially," *Inn-One Home*, 2020 WL 3456823, at *2, the first-filed rule does not apply and there is no presumption in favor of transfer to New Jersey. *See, e.g.*, *Wells Fargo Advisors, L.L.C. v. Tucker*, 195 F. Supp. 3d 543, 553 (S.D.N.Y. 2016) ("it is clear" that the initial action "will not resolve" claims brought in the second action that were not brought in the initial action); *Torres v. Kohlberg, Kravis, Roberts & Co L.P.*, 2021 WL 4267578, at *2 (S.D.N.Y. Sept. 20, 2021) (initial action did not cover class period asserted by second action); *In re Mobile Telecomm. Techs., LLC*, 243 F. Supp. 3d 478, 485 (D. Del. 2017) ("first-filed rule does not apply" because "while the same patents are asserted in the Texas Action and the instant action, the scope of the instant action is potentially much broader," implicating more than 150 products whereas the Texas Action implicated only 11).

**3.   The "balance of convenience" defeats any presumption in favor of transfer.**

Even if the New Jersey TPP case were the "first" filed, and even if it involved substantially the same claims, facts, and parties, "[t]he first-filed rule does not constitute an invariable mandate." *Employers Ins. of Wausau v. Fox Ent. Group, Inc.*, 522 F.3d 271, 275 (2d Cir. 2008). As Teva acknowledges, Mot. 10 n.7, the first-filed rule yields "where the 'balance of convenience' favors the second-filed action." 522 F.3d at 275 (citation omitted). The "factors relevant to the balance of

8

convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Id.* As the Second Circuit explained, "[a] balance of these factors will identify the more appropriate forum." *Id.* As detailed below, the 1404(a) factors weigh heavily in favor of proceeding with this action in this Court.

### B. The Court should decline Teva's transfer request.

In the Second Circuit, "the party requesting transfer carries the burden of making out a strong case for transfer." *New York Marine*, 599 F.3d at 114 (cleaned up). "It is therefore appropriate that the district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion." *Id.* (collecting cases, including *Tom & Sally's Handmade Chocolates, Inc. v. Gasworks, Inc.,* 977 F. Supp. 297, 302 (D. Vt. 1997)). Defendants cannot carry that burden, and their motion fails.

### 1. The Section 1404(a) factors do not support transfer.

Courts in the District of Vermont consider the following factors both in assessing whether the balance of convenience negates the first-filed presumption and whether the movant has met their burden under Section 1404(a) by clear and convincing evidence:

> (1) convenience of parties; (2) convenience of witnesses; (3) relative means of parties; (4) locus of operative facts and relative ease of access to sources of proof; (5) attendance of witnesses; (6) weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) desirability of having the case tried by forum familiar with substantive law to be applied; (9) practical difficulties; and (10) how best to serve the interest of justice, based on assessment of the totality of material circumstances.

*Country Home*, 350 F. Supp. 2d at 570 (cleaned up).

**Choice of forum:** Although Blue Cross brings this case as a class action, its choice of forum in its home state is nonetheless entitled to "considerable" weight. *E.g.*, *Starr Indem. & Liab. Co. v. Brightstar Corp.,* 324 F. Supp. 3d 421, 433 (S.D.N.Y. 2018) (plaintiff's choice of forum given more weight when it is plaintiff's principal place of business). That is particularly true given the unique and critical roles Blue Cross plays here in Vermont. As Vermont's only in-state, non-profit health

9

insurer, many thousands of Vermonters depend on Blue Cross for access to health care. Blue Cross works closely with the State of Vermont on health care reform initiatives designed to improve quality and access and control costs.[7] Blue Cross is not simply a business that happens to be domiciled in Vermont; it is an integral part of Vermont's health-care system and economy. The financial ramifications of this case will ripple throughout Vermont, well beyond Blue Cross's walls. This is a "compelling" reason to deny Teva's motion. *Country Home*, 350 F. Supp. 2d at 570-71 ("The impact on the local Vermont economy . . . could be substantial. Vermont has an important interest in protecting its . . . business interests." (cleaned up)).

**Convenience of the parties:** Teva is correct that "transfer is disfavored when it 'merely shift[s] the inconvenience from one party to the other.'" *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 577 (E.D.N.Y. 2014). But the Court should not credit its self-serving conclusion that the inconvenience to Teva "could be completely eliminated without substantially adding to [Blue Cross'] inconvenience," *id*. Transferring this case to New Jersey would add to Blue Cross's burden significantly, not least because it would have to hire New Jersey counsel to serve as counsel of record. *See* D.N.J. L.R. 101.1(c)(1), (4) (lawyers not licensed in New Jersey may "be permitted to appear and participate in a particular case" but a member of the District of New Jersey bar must serve as counsel of record).[8] These increased litigation costs "weigh against transfer." *Flint v. UGS Corp.*, 2007 WL 4365481, at *4 (N.D. Cal. Dec. 12, 2007); *see also* 15 Fed. Prac. & Proc. Juris. §

---

[7] *See, e.g.*, Blue Cross 2022 Vermont ACA Market Actuarial Memorandum (filed May 7, 2021) at 6-7 (explaining Blue Cross championed 2021 legislation that unmerged Vermont's small group and individual markets in order to take advantage of increased federal subsidies available in 2022 and the fact that it "has supported and participated in the state's all payer model health care reform effort since its inception"), *available at* https://perma.cc/29TN-KHWH.

[8] By contrast, although the District of Vermont requires attorneys admitted *pro hac vice* to associate with local counsel, D. Vt. L.R. 83.1(b)(4), it (1) does not limit bar admission to members of the Vermont bar and (2) permits *pro hac* admittees to serve as counsel of record. Teva attorneys Holding, Rubio-Spring, and Burgess are all members of the First and/or Second Circuits, and thus eligible to become members of the District bar. *Id.* 83.1(a)(1)(B).

3850 (4th ed.) ("[I]t may be useful to distinguish between the convenience of counsel, which most district courts will not consider, and the burden imposed on a party if it cannot use its established counsel, which courts are more likely to regard as significant.").

**Relative means of the parties:** While the parties here are "sophisticated corporations," Mot. 12-13, there is a gulf between the extent of their financial resources. Teva reported free cash flow of $2.2 billion on revenue of $15.9 billion for FY2021.[9] Blue Cross, by contrast, collected about $479 million in subscription income in calendar year 2020, but, as a nonprofit insurer, paid out about $441 million to cover its members claims and its operating expenses, leaving about $38M in net operating income.[10] This factor clearly points in Blue Cross's favor.

**Locus of operative facts/relative ease of access to sources of proof:** As Teva recognizes, this "important factor" depends on "where the events from which the claim arises occurred." *Dumont v. Corr. Corp. of America*, 2016 WL 1133918 at *6 (D. Vt. Jan. 26, 2016), *adopted* 2016 WL 3129163 (June 2, 2016). Here, the "events" underlying the claims transpired in numerous jurisdictions, including Vermont whenever Blue Cross paid inflated charges for Copaxone on behalf of its members. Further, no component of Teva's scheme was confined to or even concentrated in New Jersey. Teva Ltd. actively orchestrated the illegal schemes from Israel. *E.g.*, Compl. ¶¶ 103, 142–44, 176–80, 210. Teva Neuroscience, based in Kansas, directed the funding of the conspiracy to defraud Medicare, *id*. ¶¶ 137, 150–51, and distributed the copay "coupons" through its shared solutions program, *id*. ¶¶ 113–14. Cherry-picking Teva USA's current home address and the venue of just some of Teva's patent litigation cannot back up Teva's claim that this factor "strongly favors New Jersey." Mot. 12. Indeed, Teva USA did not move to New Jersey until 2020, long after most of

---

[9] Teva Ltd., *Teva reports Fourth Quarter and Full Year 2021 Financial Results*, (Feb 09, 2022) https://perma.cc/7CHN-9LGB.

[10] *See* BCBSVT 2020 Annual Report at 4, https://perma.cc/JHA2-UJPY.

the conduct at issue in this action occurred.[11] This factor—particularly considering the recent timing of Teva USA's move to New Jersey—clearly favors Blue Cross.

**Convenience of witnesses:** The inconveniences to Blue Cross' Vermont-based witnesses and Teva USA's New Jersey-based witnesses are likely a wash. But, as noted above, the witnesses to events underlying the claims will be located in numerous jurisdictions, including Vermont. Further, no component of Teva's scheme was confined to or even concentrated in New Jersey, meaning that there is no "convenience" to the New Jersey forum for its witnesses, while the witnesses for the *three* other Teva entities (based in Kansas and Israel) will have to travel either way. This factor too favors Blue Cross.

**Attendance of witnesses:** Blue Cross agrees that this factor is neutral, since neither court can compel the attendance of non-party witnesses in the other state.

**Calendar congestion:** Given this Court's relatively "modest caseload" and the fact that a "quick resolution . . . will benefit all parties," this factor weighs substantially against transfer. *Country Home*, 350 F. Supp. at 570. This Court's docket is among the least congested in the country, ranking 91st, 86th, and 84th in per-judgeship pending cases, civil filings, and total filings. Attach. H at 1 (June 2022 Federal Court Management Statistics for District Courts). The District of New Jersey, in contrast, has one of the most congested dockets, ranking second, third, and fourth, respectively, on those same metrics. *Id*. at 2.

**Forum's familiarity with substantive law:** Teva's lawyers repeated mis-citing of Vermont law tips this factor against transfer. In their motion to dismiss in New Jersey, they argued, based on outdated case law, that "'there is no private right of action under [9 V.S.A.] § 2461(b) for business victims of deceptive or unfair acts or practices.'" Attach. F at 37–38 (quoting *State v. Int'l*

---

[11] *See Holley v. Teva Pharm. USA, Inc.*, 2020 WL 4470617, at *2 (E.D. Pa. Aug. 4, 2020).

*Collection Serv., Inc.*, 594 A.2d 426, 428 (Vt. 1991)). However, the Vermont Consumer Protection

Act was amended in 1997 expressly to "'create a private cause of action for businesses.'" *Rathe*

*Salvage, Inc. v. R. Brown & Sons, Inc.*, 2008 VT 99, ¶ 21, 184 Vt. 355 (2008) (quoting H.226, 1997-

98 Vt. Gen. Assembly). "[B]usiness entities" are "unequivocally . . . entitled to the same rights

under the Act as other consumers." *Id.* In their reply, Teva stood by their mistaken view of Vermont

law, arguing that the Vermont CPA claim failed because plaintiffs "did not purchase Copaxone or

GA drugs for their own use." Attach. I at 24–25 (Reply Brief, *In re Copaxone Antitrust Litig.*, No.

2:22-cv-01232 (D.N.J. Aug. 15, 2022), ECF No. 70). This factor therefore counsels against transfer.

**Practical difficulties:** This factor is neutral and Teva does not argue otherwise.

**How best to serve the interest of justice, based on assessment of the totality of material**

**circumstances:** As explained above, at least six factors weigh decidedly against transfer: the

convenience of the parties, their relative means, locus of operative facts/relative ease of access to

sources of proof, Blue Cross's choice of forum and unique role here in Vermont, the two Courts'

relative calendar congestion, and the desirability of litigating in a forum intimately familiar with

Vermont law. The other three are, at most (from Teva's perspective), neutral.

Further, the Court should give due consideration to the facts that suggest forum shopping. As

explained above, although Teva is litigating Copaxone claims in multiple districts, it has chosen *only*

to seek transfer of this case. It argues to this Court that the potential classes overlap, but fails to

mention its effort to exclude all Vermont claims from the New Jersey action. *Supra* p. 7. It also fails

to mention that it seeks to sharply narrow the scope of the TPP case in New Jersey by arguing that

the Third Circuit requires a named plaintiff to have standing for every potential state-law claim.

Attach. F, at 11–16. The Second Circuit has held otherwise—meaning Teva is attempting, *sub*

*silentio*, to consolidate potential class claims in a jurisdiction it views as more favorable. *See Langan*

*v. Johnson & Johnson Consumer Companies, Inc.,* 897 F.3d 88, 95–96 (2d Cir. 2018) (holding that

13

named plaintiffs can assert claims for similarly situated absent class members in other states). And finally, the ties between this litigation and the District of New Jersey are minimal. Three of the four Teva Defendants are based in other jurisdictions. In contrast to Vermont, New Jersey does not have an *Illinois Brick* repealer statute and thus courts in New Jersey have no particular interest or expertise in adjudicating the antitrust claims available to indirect purchasers like Blue Cross. The incidence of MS in Vermont far exceeds the incidence of MS in New Jersey. *See* Compl. ¶ 49. Even the indirect purchaser plaintiffs suing in New Jersey are not based there.

This lopsided imbalance of the factors falls far short of "making out a strong case for transfer" by clear and convincing evidence. *New York Marine*, 599 F.3d at 113–14.

   **2.   Teva has failed to meet its burden under Section 1404(a).**

Under Section 1404(a), Teva must show that this case could have been filed in the District of New Jersey, which means Teva must *show* that all defendants are subject to personal jurisdiction in that district. *See, e.g., Volkswagen De Mexico, S.A. v. Germanischer Lloyd,* 768 F. Supp. 1023, 1029 (S.D.N.Y. 1991) (moving party "bears the burden of establishing personal jurisdiction over the defendants in the transferee forum"). This requirement prevents defendants from having an unfair advantage in forum selection. *See* 15 Fed. Prac. & Proc. Juris. § 3845 (4th ed.) (requirement that defendants establish personal jurisdiction in transferee district avoids forum shopping). Teva's conclusory assertion that jurisdiction lies in New Jersey is insufficient to satisfy Teva's burden.

First, the fact that Teva has not "contested" personal jurisdiction in the New Jersey litigation, Mot. 14, is irrelevant. *E.g., Starr Indem. & Liab. Co.*, 324 F. Supp. 3d at 432. A defendant's decision to "consent" to jurisdiction in the transferee district does not mean that the action could originally have been brought there for purposes of Section 1404(a). *See id.*

Second, Teva's only explanation for why Teva Ltd (the Israeli parent) would be subject to jurisdiction in New Jersey is that it filed some of the Copaxone patent cases in that district. Mot. 14.

14

While those filings might bear on jurisdiction, that mere assertion does not suffice under Section 1404(a) to affirmatively demonstrate that Teva Ltd is subject to personal jurisdiction in New Jersey.

Third, Teva's casual treatment here of the "minimum contacts" and other due process requirements for establishing specific jurisdiction flies in the face of arguments it made in the Copaxone RICO case pending in the Western District of Washington. In that case, Teva argued *inter alia* that a "conclusory statement is insufficient to establish a prima facie case of specific jurisdiction over Teva Ltd.," and that "[c]ourts across the country have rejected attempts to bring Teva Ltd. into court based on inadequate contacts with the forum state."[12] And although its patent filings are at issue in that jurisdictional dispute, Teva studiously avoided making any representation to the Washington court that it would be subject to personal jurisdiction in New Jersey.[13] Teva's minimalist discussion of personal jurisdiction in its filing here, contrasted with the extremely high burden it wishes to impose on plaintiffs in the Washington case, raises a serious concern about forum shopping. This is not how § 1404(a) works. Teva must do more than merely concede to jurisdiction in New Jersey; it must make an adequate showing of the grounds for jurisdiction sufficient to satisfy the Court that this action could have been filed there.

**II.    There is no reason to stay this case.**

Just as Teva has not shown a basis to transfer this case, it has likewise provided no basis for an indefinite stay. Blue Cross is entitled to a prompt disposition of its claims in this District.

CONCLUSION

Teva fails to carry its burden, and thus Teva's motion to transfer should be denied.

REQUEST FOR HEARING

Pursuant to Rule 7(a)(6), Blue Cross respectfully requests oral argument on this motion.

---

[12] Joint Motion to Dismiss Plaintiffs' Amended Complaint at 15-16, *King County v. Teva Pharmaceuticals Indus., Ltd.*, No. 21-cv-00477 (W.D. Wash., Nov. 17, 2021), ECF No. 48.

[13] *See, e.g.*, *id.* at 22.

Respectfully submitted,                By: */s/ Bridget Asay*

Bridget Asay
Michael Donofrio
STRIS & MAHER LLP
15 East State Street, Suite 2
Montpelier, Vermont 05602
(802) 858-4285
(802) 858-4465
basay@stris.com
mdonofrio@stris.com

Elizabeth R. Brannen (*pro hac vice*)
STRIS & MAHER LLP
777 S. Figueroa Street, Suite 3850
Los Angeles, CA 90017
(213) 995-6800
ebrannen@stris.com

Lynn Lincoln Sarko (*pro hac vice*)
Gretchen Freeman Cappio (*pro hac vice*)
Matthew M. Gerend (*pro hac vice*)
Natida Sribhibhadh (*pro hac vice*)
Sydney Read (*pro hac vice*)
KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
mgerend@kellerrohrback.com
natidas@kellerrohrback.com
sread@kellerrohrback.com

Alison E. Chase (*pro hac vice*)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: (805) 456-1496
achase@kellerrohrback.com

*Attorneys for Plaintiffs Blue Cross and Blue Shield of*
*Vermont and The Vermont Health Plan*

Dated: October 10, 2022