# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF VERMONT and THE VERMONT HEALTH PLAN, | : |
| *Plaintiffs*, | : |
| v. | : |
| | : |
| TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., TEVA SALES AND MARKETING, INC., and TEVA NEUROSCIENCE, INC., | : |
| | : |
| *Defendants*. | : |

**Civil Action No. 5:22-cv-00159-gwc**

## DEFENDANTS' MOTION TO PARTIALLY STAY DISCOVERY DURING THE PENDENCY OF THEIR FORTHCOMING MOTION TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

RELEVANT BACKGROUND ..................................................................................... 3

I.  This Case Is One of Four Actions Relating to Copaxone. .................................... 3

II.  Teva's Forthcoming Motion to Dismiss and Plaintiffs' Requests to Begin Discovery in this Action. ...................................................................................... 3

III.  History and Status of Discovery in the New Jersey Cases. ............................... 4

LEGAL STANDARD .................................................................................................. 7

ARGUMENT ............................................................................................................... 8

I.  This Case Is Highly Complex and Teva Will Make a Substantial Showing That the Action Will Either Be Dismissed in Full or Reduced in Scope. ......................................... 9

II.  The Discovery Contemplated By Plaintiffs Would Be Highly Burdensome to Teva, and Diverging From the New Jersey Actions Would Be Grossly Inefficient. ........................ 12

III.  Plaintiffs Would Not Be Prejudiced By the Requested Stay. ........................... 14

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

CASES:

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
    823 F.3d 51 (2d Cir. 2016).............................................................................11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).....................................................................................12

*Boelter v. Hearst Commc'ns, Inc.*,
    2016 WL 361554 (S.D.N.Y. Jan. 28, 2016) ...................................................9

*Cargill, Inc. v. Monfort of Colo., Inc.*,
    479 U.S. 104 (1986).....................................................................................11

*Clinton v. Jones*,
    520 U.S. 681 (1997).......................................................................................7

*In re Currency Conversion Fee Antitrust Litig.*,
    2002 WL 88278 (S.D.N.Y. Jan. 22, 2002) ...............................................8, 13

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007)...........................................................................13

*Farzan v. Bridgewater Assocs., LP*,
    699 F. App'x 57 (2d Cir. 2017) .....................................................................7

*Grenier v. Encompass Ins. Co.*,
    2017 WL 9934466 (D. Vt. July 18, 2017) ..............................................7, 8, 9

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*,
    2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009).................................................9

*Jenkins as next friend of Miller-Jenkins v. Miller*,
    2018 WL 11418423 (D. Vt. Aug. 29, 2018)...................................................7

*Johnson v. N.Y. Univ. Sch. of Educ.*,
    205 F.R.D. 433 (S.D.N.Y. 2002) ..................................................................9

*Levy v. BASF Metals Ltd.*,
    755 F. App'x 29 (2d Cir. 2018) ...................................................................13

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*,
    676 F.3d 83 (2d Cir. 2012)............................................................................8

*Mountain Cable Co. v. Public Service Bd. of State of Vt.*,
  2003 WL 23273428 (D. Vt. Nov. 4, 2003) ..................................................................7

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys, Div. of/& Am. Home Prods.*
  *Corp.*,
   850 F.2d 904 (2d Cir. 1988) ..................................................................................11

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  562 F. Supp. 2d 392 (E.D.N.Y. 2008) ...................................................................13

*Pharmacychecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*,
  2021 WL 2477070 (S.D.N.Y. June 17, 2021) ........................................................13

*In re Platinum & Palladium Commodities Litig.*,
  2010 WL 11578945 (S.D.N.Y. Nov. 30, 2010) ........................................................8

*Spinelli v. Nat'l Football League*,
  2015 WL 7302266 (S.D.N.Y. Nov. 17, 2015) .....................................................9, 13

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
  64 F. Supp. 3d 665 (E.D. Pa. 2014) ......................................................................11

*Sullivan v. Saint-Gobain Performance Plastics Corp.*,
  2019 WL 8272776 (D. Vt. Aug. 28, 2019) ...............................................................9

**OTHER AUTHORITIES:**

Fed. R. Civ. P. 16(b)(2) ...............................................................................................7

Fed. R. Civ. P. 26(c) ...................................................................................................7

L.R. 26(a)(2) ................................................................................................................7

L.R. 26(a)(3) ................................................................................................................7

## INTRODUCTION

Defendants Teva Pharmaceuticals Industries Ltd.,[1] Teva Pharmaceuticals USA, Inc., Teva Neuroscience, Inc., and Teva Sales and Marketing, Inc. (collectively, "Teva") respectfully request that the Court implement a limited stay of discovery during the pendency of their forthcoming motions to dismiss.

Plaintiffs have filed a sprawling 118-page, 386-paragraph complaint seeking to bring a purported class action with multiple sub-classes stretching back to 2006.  The complaint contains multiple federal and state antitrust claims, as well as claims under state consumer protection laws and for unjust enrichment, based on at least six largely distinct theories of anticompetitive conduct. Teva intends to file a motion to dismiss that it anticipates will dispose of, or at least significantly narrow, the issues in this action.  In the meantime, and until that motion is resolved, Teva respectfully submits that it would be appropriate to limit discovery.  A partial stay is needed not only to limit the burden from expensive discovery in an antitrust case that Teva believes will either be dismissed or substantially narrowed, but also to avoid the inefficiency that would result if this matter is not appropriately coordinated with the closely-related New Jersey actions that involve the same subject matter as this case.  Indeed, if this action is not fully dismissed, a discovery conference with the Court will likely be necessary in this complex class action to determine appropriate coordination with the related Copaxone antitrust cases.

As this Court is aware, three related antitrust actions are being pursued against Teva in the District of New Jersey, all presenting overlapping allegations regarding Teva's marketing of the prescription drug Copaxone.  In denying Teva's motion to transfer, this Court "recognize[d] that

---

[1] As will be set forth in Teva Pharmaceuticals Industries Ltd.'s (Teva Ltd.) forthcoming Rule 12(b)(2) motion, Teva Ltd. objects to the assertion of personal jurisdiction over it in this case.  By joining this procedural motion, Teva Ltd. does not consent to personal jurisdiction and fully reserves that defense.

litigation of multiple related lawsuits in different courts can result in inefficient discovery," ECF No. 45 at 28, but it nonetheless concluded that this risk could be mitigated.  An efficient path forward requires coordination of discovery with the New Jersey actions to avoid wasting time and millions of dollars through, *inter alia*, duplicative document productions, repeat depositions of witnesses, and needless discovery disputes.

In opposing Teva's motion to transfer, Plaintiffs *agreed* with all of these points, as they represented that they "would foresee … significant coordination overall on discovery" with the New Jersey actions to "avoid duplication."  ECF No. 46 at 20:20-21:4.  But for cross-jurisdictional coordination to work, the cases will need to proceed in parallel.  In the New Jersey actions, the Court has adopted a balanced approach to discovery while dispositive motions are pending, declining to open up full discovery while Teva's motions to dismiss are considered, but still allowing for an initial phase of discovery to move forward.  The resulting productions have been considerable, as Teva has already provided nearly 300,000 documents, consisting of approximately one million pages of material.  Teva respectfully submits that the parties should follow the same path here.  Subject to negotiations over an appropriate protective order and related protocols, Teva is prepared to promptly share with Plaintiffs its complete existing New Jersey production.  But Teva respectfully submits that open-ended discovery beyond this substantial initial product is premature and would severely prejudice Teva by undermining the potential for coordination with the New Jersey actions that Plaintiffs concede is appropriate.

Teva thus requests that the Court stay discovery during the pendency of Teva's forthcoming motion to dismiss here, other than re-production of the Phase 1 documents from the New Jersey cases (as described below).  The requested stay will allow the Court to determine the proper scope of relevance for discovery in this action and efficiently manage the scope and cost of

discovery, even as Plaintiffs receive access to approximately one million pages of material to review in the interim.  Consistent with Teva's interest in achieving efficient coordination across these related actions, if discovery in the New Jersey cases progresses beyond the "Phase 1" productions, Teva would support timely modification of the stay here to ensure Plaintiffs here are placed in the same position as the New Jersey Plaintiffs.

## RELEVANT BACKGROUND

### I.     This Case Is One of Four Actions Relating to Copaxone.

This case is one of four related actions asserting antitrust and related state-law claims against Teva arising out of its marketing of the multiple sclerosis drug Copaxone.  As the Court is aware, the other three cases are proceeding in the District of New Jersey: *Mylan Pharmaceuticals Inc. v. Teva Pharmaceuticals Industries Ltd.*, No. 2:21-cv-13087, and two purported class actions in *In re Copaxone Antitrust Litigation*, No. 2:22-cv-01232, on behalf of direct purchasers (DPPs) and third-party payors (TPPs) (collectively, the "D.N.J. Cases").  In light of the Court's recent order on its Motion to Transfer, ECF No. 45, which analyzed various issues in connection with the D.N.J. Cases, Teva does not repeat and instead incorporates the factual background from its Motion to Transfer, ECF No. 23 at 2-6, here.

### II.    Teva's Forthcoming Motion to Dismiss and Plaintiffs' Requests to Begin Discovery in this Action.

On November 11, 2022, the parties filed a stipulated motion for additional pages in connection with Teva's forthcoming motion to dismiss.  ECF No. 41.  Given that the federal and state antitrust claims in Plaintiffs' Complaint rest on at least six largely distinct theories of anticompetitive conduct, the parties requested 70 pages each for the memoranda in support of and in opposition to Teva's motion to dismiss, and 30 pages for the reply.  *Id.* at 3.  On November 14, 2022, the Court granted the requested extension of page limits.  ECF No. 43.  In addition, at the

November 14, 2022 hearing on Teva's Motion to Transfer, ECF No. 23, the Court specified that Teva's motion to dismiss would be due 30 days after the order on the Motion to Transfer, ECF No. 42.  That order issued on November 21, 2022, ECF No. 45, and Teva's forthcoming motion to dismiss is accordingly due on December 21, 2022.

On December 5, 2022, counsel for Plaintiffs requested to schedule the parties' Rule 26(f) conference.  Two days later, counsel for Plaintiffs sent a letter to Teva requesting production of materials produced in "Copaxone-related governmental proceedings" that were reviewed and produced in the *Mylan* action, specifically: "(i) materials produced to Congress as part of the Congressional investigations into Teva's conduct as it relates to Copaxone; (ii) materials provided to or received from the Department of Justice as part of investigation into Teva's conduct as it relates to Copaxone, including materials produced in connection with [two specified cases]; and (iii) materials produced to the Food and Drug Administration in connection with Teva's Citizen Petitions in connection with Copaxone."  Ex. 1 at 1.  The parties subsequently held a Rule 26(f) conference on December 9, 2022.  During the conference, counsel for Teva stated that Teva intended to file a motion for a partial stay of discovery.  Plaintiffs stated that they would oppose the motion.

### III.   History and Status of Discovery in the New Jersey Cases.

In the *Mylan* action, Mylan served document requests seeking wholesale reproductions of materials previously produced in prior litigations and governmental investigations relating to, among other issues, Copaxone.  Teva opposed Mylan's document requests as improper "clone discovery" that courts routinely reject.  *Mylan*, No. 2:21-cv-13087, ECF No. 25.

An initial pretrial status conference in the *Mylan* case was held on February 22, 2022.  In addressing the parties competing proposals, the New Jersey court struck a balance by allowing some initial discovery of more readily available documents to proceed immediately, while

declining to open full discovery while a motion to dismiss is pending.  The court therefore ordered that discovery would proceed in two phases.  *Id.*, ECF No. 50.  As part of Phase 1 discovery, Teva was ordered to review (i) materials produced to Congress as part of the Congressional investigation into drug pricing; (ii) materials provided to the Department of Justice as part of its investigation into Teva's conduct as it relates to Copaxone, including materials produced in connection with *United States v. Teva Pharmaceuticals USA, Inc.*, No. 1:20-cv-11548 (D. Mass.) and *United States ex. rel. Charles Arnstein & Hossam Senousy v. Teva Pharmaceuticals USA, Inc.*, No. 1:13-cv-03702 (S.D.N.Y.); and (iii) materials produced to the Food and Drug Administration in connection with Teva's Citizen Petitions in connection with Copaxone.  Within those categories, Teva was ordered to produce only those materials relevant to the *Mylan* action.  *Id.*  In addition, the parties were directed to meet and confer regarding certain relevance disputes, as well as to negotiate a protective order and ESI protocol.  *Id.*  The court declined, however, to authorize additional discovery at that time. The New Jersey court held a second status conference on April 28, 2022, *id.*, ECF No. 62, and later issued an order specifying production of certain Phase 1 materials within a set timeframe.  *Id.*, ECF No. 68.

Consistent with the Court's discovery orders, Teva began reviewing documents in early 2022 for relevance in the *Mylan* action, including all of the materials made available in multiple government investigations and produced in multiple lawsuits relating to Copaxone.  Pursuant to an agreement by the parties, Teva then undertook extensive redactions for competitively sensitive and irrelevant information concerning products other than Copaxone.  In addition, because some of the relevant materials included confidential third-party material subject to disclosure obligations, Teva had to provide notice to over a dozen third parties.  Based upon objections following those notices, Teva, Mylan, and the classes (who by that time had filed their own

complaints) negotiated over the course of several months a stipulation with one of the third-parties. Following its review and redaction process, Teva produced 294,284 documents, totaling 936,493 pages across 28 separate production volumes between July 8, 2022 and November 9, 2022.  In the DPP and TPP cases, Teva agreed to provide all of the Phase 1 productions in the *Mylan* action to the DPPs and TPPs, *In re Copaxone*, No. 2:22-cv-01232, ECF No. 77.  Teva's Phase 1 production is now complete.

In the meantime, the parties in New Jersey and the New Jersey court have taken measures to place the case in a position for additional discovery to proceed efficiently should any of the complaints survive Teva's fully briefed motions to dismiss.  On November 18, 2022, the New Jersey court approved a stipulation between Mylan and the DPP and TPP classes to coordinate for discovery purposes to the extent reasonably practicable. *Mylan*, 2:21-cv-13087, ECF No. 104; *In re Copaxone*, No. 2:22-cv-01232, ECF No. 90.  Teva has also entered into a protective order and an ESI Protocol with Mylan.  *Mylan*, No. 2:21-cv-13087, ECF No. 69.  In the class cases, Teva has negotiated a different protective order, *In re Copaxone*, No. 2:22-cv-01232, ECF No. 91.  The parties continue to work on finalizing an ESI Protocol, *id.*, ECF No. 93.

At the same time, the New Jersey court has repeatedly rejected requests to allow full-blown Phase 2 discovery while Teva's motions to dismiss remain pending.  On July 15, 2022, shortly after Teva's initial Phase 1 production, Mylan requested that Phase 2 discovery begin, *Mylan*, No. 2:21-cv-13087, ECF No. 75, and the Court denied the request, *id.*, ECF No. 84.   On August 26, 2022, Mylan renewed its request, *Id.*, ECF No. 88, at 4, but the New Jersey court reaffirmed its discovery ruling at a September 12, 2022 hearing.  *See id.*, ECF No. 100; *see also id.*, ECF No. 99 at 5.  Most recently, on October 21, 2022, Mylan again asked the New Jersey court to open Phase 2 discovery.  *Id.*, ECF No. 99 at 5.  But the court declined to do so, and instead directed the parties

to meet and confer on additional preliminary issues (*i.e.*, trying to reach agreement on custodians and departmental files).  *Id.*, ECF No. 101.

## LEGAL STANDARD

A district court has "broad discretion to direct and manage the pre-trial discovery process." *Farzan v. Bridgewater Assocs., LP*, 699 F. App'x 57, 58 (2d Cir. 2017) (Mem.) (affirming trial court's stay of discovery).  In Vermont, a "request for a stay of discovery is treated as a request for a protective order under Rule 26(c)" of the Federal Rules of Civil Procedure.  *Jenkins as next friend of Miller-Jenkins v. Miller*, 2018 WL 11418423, at *1 (D. Vt. Aug. 29, 2018); Fed. R. Civ. P. 26(c).  That rule provides, in relevant part, that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery[.]"  Fed. R. Civ. P. 26(c).  "A request for a stay of discovery, pursuant to Rule 26(c), is committed to the sound discretion of the court based on a showing of 'good cause.'"  *Grenier v. Encompass Ins. Co.*, 2017 WL 9934466, at *2 (D. Vt. July 18, 2017) (granting motion to stay court order compelling discovery).  The Local Rules of the District of Vermont also provide that during the pendency of a motion to dismiss, "[a] party may request a stay, or phased discovery, until the motion is decided, if a stay or phasing will help to secure the just, speedy, and inexpensive determination of the action."  L.R. 26(a)(3).  Furthermore, Federal Rule 16(b)(2) and Local Rule 26(a)(2) authorize the Court to delay the filing of a discovery schedule for good cause.

Additionally, "[t]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."  *Mountain Cable Co. v. Public Service Bd. of State of Vt.*, 2003 WL 23273428, at *4 (D. Vt. Nov. 4, 2003) (quoting *Clinton v. Jones*, 520 U.S. 681, 701 (1997)); *see also Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96-97, 99 (2d Cir.

2012) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort.").

## ARGUMENT

In light of Teva's forthcoming motion to dismiss, which will address numerous deficiencies in Plaintiffs' Complaint, ECF No. 1 ("Compl."), discovery should be stayed other than Teva's re-production of the Phase 1 documents already produced in the D.N.J. Cases.[2]  Such a limited stay would promote the efficient management of complex and costly antitrust discovery while the Court determines whether the case should go forward (and in what form).  During this time, Plaintiffs could still further develop their case by reviewing the million pages of documents produced in the D.N.J. Cases.

In determining whether to issue a stay of discovery pending a motion to dismiss, district courts in this circuit consider "the nature and complexity of the particular case[,]" as well as "(1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay."  *Grenier*, 2017 WL 9934466, at *2; *see also In re Currency Conversion Fee Antitrust Litig.*, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (explaining that "a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion appears to have substantial grounds" (quotation marks and brackets omitted)); *In re Platinum & Palladium Commodities Litig.*, 2010 WL 11578945, at *1 (S.D.N.Y. Nov. 30, 2010) (granting motion to stay discovery with exception for 250,000 pages of documents previously produced to a government agency).  Thus, good cause for a stay "may be shown where a party has filed a

---

[2] Teva's offer to re-produce the Phase 1 materials from the D.N.J. Cases is conditioned on the entry of an appropriate protective order in this action and subject to its disclosure obligations to third-parties of production of their confidential material.

dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." *Boelter v. Hearst Commc'ns, Inc.*, 2016 WL 361554, at *4 (S.D.N.Y. Jan. 28, 2016).  The moving party bears the burden of demonstrating that a stay is warranted. *Grenier*, 2017 WL 9934466, at *2.

Courts often grant stays of discovery during pending motions to dismiss in cases with complex claims and potentially broad discovery. *See, e.g.*, *Sullivan v. Saint-Gobain Performance Plastics Corp.*, 2019 WL 8272776, at *1 (D. Vt. Aug. 28, 2019) (noting that discovery was stayed during pendency of motion to dismiss); *Spinelli v. Nat'l Football League*, 2015 WL 7302266, at *2 (S.D.N.Y. Nov. 17, 2015) (continuing discovery stay in complex antitrust and copyright dispute where discovery was likely to be "broad and significant" and scope could be limited following resolution of motion to dismiss); *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (granting stay where motion to dismiss was "not … unfounded in law" and stay "could avoid the need for costly and time-consuming discovery" spanning a six-year period); *Johnson v. N.Y. Univ. Sch. of Educ.*, 205 F.R.D. 433, 434 (S.D.N.Y. 2002) (granting during pendency of motion to dismiss a stay of discovery including extensive set of interrogatories covering more than five years).

Each of the factors that courts consider with respect to stays of discovery during a pending motion to dismiss supports granting the limited stay that Teva requests here.

I.      **This Case Is Highly Complex and Teva Will Make a Substantial Showing That the Action Will Either Be Dismissed in Full or Reduced in Scope.**

This action is undisputedly complex and far-reaching in terms of the time and reach of conduct implicated in Plaintiffs' allegations.  Because Teva is filing a motion to dismiss that it believes will either end this litigation or substantially limit its scope, a stay pending a ruling on the

motion would greatly promote efficiency and prevent unnecessary expense by avoiding burdensome discovery on matters that are not actionable.

Plaintiffs' Complaint consists of 386 separately numbered paragraphs.  *See generally* Compl.   It asserts six separate counts for violations of state antitrust statutes based on monopolization, attempted monopolization, and contracts, combination, or conspiracy to restrain trade; violations of both Sections 1 and 2 of the Sherman Act; violations of state consumer protection laws; and unjust enrichment.  Order at 1, ECF No. 45.  Further, this is a purported class action consisting of two separate sub-classes that would cover "tens of thousands of health plans and other payors throughout the United States" starting *in 2006* and continuing "until the effects of Teva's unlawful conduct cease."  Compl. ¶¶ 251, 254.  The alleged conduct Plaintiffs have put at issue is likewise sprawling, encompassing challenges to, for example:

- Patent suits and regulatory petitions that Teva filed eight or more years ago.  Compl. ¶¶ 85, 89.

- Teva's 2014 launch of a new version of Copaxone (40 mg, injections three-times-per week) alongside its legacy product (20 mg, daily injections).  *Id.* ¶¶  166-167.

- Rebate agreements that Teva allegedly entered with pharmacy benefit managers (PBMs) and specialty pharmacies to discount Copaxone in the face of generic competition.  *Id.* ¶¶ 104-105.

- Direct and indirect co-payment subsidies that Teva allegedly provided to patients to lower their out-of-pocket cost for Copaxone prescriptions.  *Id.* ¶¶ 106, 118, 122.

- Teva's efforts to market Copaxone and encourage physicians to write "[d]ispense as [w]ritten" on prescriptions so that patients would receive Copaxone.  *Id.* ¶¶ 195-196.

- An unsuccessful suit that Teva filed against the U.S. Food and Drug Administration in 2020, which is not alleged to have had any impact on the availability or price of Copaxone or its generic equivalents.  *Id.* ¶¶ 97, 101.

Teva intends to file a motion to dismiss Plaintiffs' claims that will likely significantly narrow—if not entirely dispose of—the issues in this action.  Recognizing the complexity of the

case, this Court accepted the parties' stipulation to extend the page-limit for Teva's motion to 70

pages.  ECF No. 43.  Teva refers the Court to that forthcoming motion in order to evaluate the

strength of its position, but notes the following here:

- The Complaint challenges conduct that occurred well outside all applicable statutes of limitations for both the state and federal claims.  In particular, Plaintiffs' challenges to Teva's lawsuits and regulatory petitions between 2008 and 2015 (Compl. ¶ 89), as well as its launch of Copaxone 40 mg in 2014 (*id.* ¶¶ 166-167), are all untimely.  Enforcing the statute of limitations alone would thus dramatically narrow this case and the relevant topics for discovery.

- The Complaint challenges conduct that is immune from antitrust scrutiny.  Teva's exercise of its First Amendment right to seek relief in court or petition a federal agency for action is protected by *Noerr-Pennington* immunity.  *See, e.g.*, *Apotex  Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 58-62 (2d Cir. 2016) (dismissing antitrust claim challenging petition to the FDA based on *Noerr-Pennington*).

- Plaintiffs challenge conduct that is inherently *procompetitive*.  For example, Plaintiffs repeatedly challenge—in various guises—discounts, rebates, and patient subsidies that Teva offered for Copaxone.  Such efforts to compete on price not only undercut any inference of monopoly power by Teva, but they represent exactly the kind of conduct that the antitrust laws are intended *to encourage*.  *See Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 116 (1986) (It "is in the interest of competition to permit dominant firms to engage in vigorous competition, including price competition").  Similarly, Plaintiffs challenge Teva's launch of Copaxone 40 mg even though Teva preserved consumer choice by leaving its 20 mg product on the market.  And "simply introducing a new product on the market … does not, by itself, constitute exclusionary conduct."  *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 682 (E.D. Pa. 2014).

- The Complaint relies on allegations, borrowed entirely from Mylan's complaint, that Teva made false statements about Mylan's product.  Plaintiffs' recycled allegations are conclusory, but even if accepted, they would not support an antitrust claim, as Plaintiffs' allegations do not "overcome [the] presumption" applicable to "a monopolization claim based on misleading advertising … that the effect on competition of such a practice [is] *de minimis*."  *Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Lab'ys, Div. of/& Am. Home Prods. Corp*., 850 F.2d 904, 916 (2d Cir. 1988) (quotation marks omitted).

- Plaintiffs challenge actions by Teva that did not plausibly affect generic competition.  That is most obvious with respect to Teva's unsuccessful suit against the FDA, which the Complaint effectively concedes had no impact.  Compl. ¶¶ 97, 101.  But the same flaw pervades several of Plaintiffs' other challenges, including their misguided allegations that Teva's patent suits and citizen petitions delayed generic launch despite the presence of other regulatory barriers.

These arguments are substantial, raising a serious prospect that this matter will be dismissed entirely or at least significantly narrowed.  Notably, Teva presented very similar arguments in its motion to dismiss the Mylan complaint, which closely parallels Plaintiffs' Complaint here.[3] Presented with those arguments, the New Jersey court agreed to limit initial discovery as described above and it has repeatedly rejected attempts to broaden discovery while the motions to dismiss are pending.  *See* p. 4-7, *supra*.

## II.   The Discovery Contemplated By Plaintiffs Would Be Highly Burdensome to Teva, and Diverging From the New Jersey Actions Would Be Grossly Inefficient.

A partial stay of discovery is also appropriate here because the breadth of potential discovery in this action is staggering.  Plaintiffs' allegations span a period of over fifteen years and touch virtually every player in the healthcare industry, from drug manufacturers to distributors, health insurers, PBMs, pharmacies, doctors, and patients.  Plaintiffs have put at issue conduct covering a wide variety of issues, as described above, which includes not only Teva's private business dealings, but also multiple other litigations and regulatory actions, including "almost a dozen patent lawsuits," *id.* ¶ 85, a lawsuit focused on alleged anti-kickback issues, *id.* ¶ 122, eight citizens petitions filed with the FDA between 2008 and 2015, *id.* ¶ 89, and an unsuccessful request that the FDA reclassify Copaxone as a biological product, *id.* ¶¶ 97, 101.

The significant costs of complex antitrust litigation are well-recognized and strongly favor resolving the forthcoming motion to dismiss before requiring the parties and the Court to invest significant resources in irrelevant discovery.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("The costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsels against sending the parties into discovery when there is no reasonable likelihood

---

[3] *See Mylan*, No. 2:21-cv-13087, ECF No. 36; *see also In re Copaxone*, No. 2:22-cv-01232, ECF No. 40 (motion to dismiss direct payor action), ECF No. 41 (motion to dismiss third-party payor action).

that the plaintiffs can construct a claim from the events related in the complaint." (brackets omitted)); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 562 F. Supp. 2d 392, 398 (E.D.N.Y. 2008) (since "[d]iscovery of antitrust claims is frequently a daunting endeavor…[i]f a complaint's allegations, taken as true, cannot sustain a claim of entitlement to relief, then they should be disposed of before the parties—and the court—invest substantial resources in massive discovery."); *Currency Conversion Fee*, 2002 WL 88278, at *3 (exercising discretion to impose stay on non-custodial depositions given the number of parties and "the substantial cost of discovery typical of antitrust cases of this magnitude").  Indeed, the Second Circuit has expressly counseled prudence and caution in antitrust cases: district courts must "keep in mind that proceeding to antitrust discovery can be expensive" and they should thus "insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.4 (2d Cir. 2007) (quotation marks omitted).

Permitting full-fledged discovery now would also be inefficient because of the extraordinary breadth of Plaintiffs' complaint and the substantial likelihood that a motion to dismiss will, at a minimum, result in significant narrowing.  *See Levy v. BASF Metals Ltd.*, 755 F. App'x 29, 31 (2d Cir. 2018) (affirming trial court's reliance on undue burden and expense as appropriate factors in granting stay of discovery during motion to dismiss).  The partial stay of discovery that Teva requests would create substantial efficiencies and "have the advantage of simplifying and shortening discovery in the event that some of Plaintiffs' claims are dismissed and others survive, by limiting the scope of the parties' inquiry to claims that have been established as potentially viable."  *Spinelli*, 2015 WL 7302266, at *2; *see also Pharmacychecker.com, LLC v. Nat'l Ass'n of Bds. of Pharmacy*, 2021 WL 2477070, at *2 (S.D.N.Y. June 17, 2021) (prevailing on motion to dismiss "would create substantial efficiencies" by "mitigat[ing] the costs of modern

13

federal antitrust litigation" and relieve some parties or nearly all of their discovery obligations) (internal quotation marks omitted).

In addition, a partial stay is especially warranted here in order to allow the coordination with the D.N.J. Cases and to avoid burdensome and inefficient duplication of efforts.  As described above, p. 6, *supra*, the New Jersey court recently entered an order agreeing to coordinate discovery in the D.N.J. Cases.  Thus, if any aspect of those cases survives Teva's motions to dismiss, the parties there will be able to work together to promote efficiency through common document productions and joint depositions—avoiding the exceptional burden for witnesses that would result if they have to sit for multiple depositions on the same topics before different groups of plaintiffs' counsel.  *Cf.* ECF No. 45 at 29 (denying motion to transfer on the ground it was not needed to serve "[t]he convenience of witnesses").  Plaintiffs in this case have acknowledged that "significant coordination overall on discovery" is needed to "avoid duplication."  ECF No. 46 at 20:20-21:4.  But if discovery in this later-filed action proceeds on a different schedule than in the D.N.J. Cases, effective coordination of discovery across jurisdictions will become increasingly difficult.

### III.    Plaintiffs Would Not Be Prejudiced By the Requested Stay.

Plaintiffs will not be prejudiced by a stay of discovery during the pendency of Teva's forthcoming motion to dismiss because Teva still plans to make a substantial production during that period.  Consistent with Teva's desire to coordinate discovery in this matter with the D.N.J. Cases, Teva will endeavor to place Plaintiffs here in the same position as the New Jersey Plaintiffs—even though Plaintiffs here filed suit several months after even the last-filed of the D.N.J. Cases.  Thus, once the parties negotiate an acceptable protective order, Teva plans to immediately produce the complete Phase 1 productions it has provided to the New Jersey Plaintiffs—documents that Teva reviewed and produced over a course of eight months in the

D.N.J. Cases.  Those productions contain 294,284 documents, consisting of 936,493 pages across 28 production volumes.

Plaintiffs in this action will thus quickly gain access to a significant amount of Teva materials that they can begin reviewing, and such review may help streamline discovery by allowing Plaintiffs to serve more tailored requests in the future.  Moreover, even if the Court grants Teva's requested relief, Teva is prepared to take other low-cost measures to move this case forward, including providing its initial disclosures as scheduled and endeavoring to negotiate a protocol for electronic discovery.  And in the event that the New Jersey court is first to rule on the motions to dismiss, Teva would take steps to ensure that this action does not fall behind.  Thus, if the stay is lifted in the New Jersey actions and broader discovery is allowed, Teva would support modification of the stay order in this Court to the extent needed to facilitate coordinated discovery. Teva's proposed approach would thus make discovery in this case simpler, less expensive, and more efficient, and reduce the potential for discovery disputes and issues to be resolved by this Court, while still minimizing any potential prejudice to Plaintiffs and enabling them to continue developing their case even during the partial stay.

## CONCLUSION

For these reasons, Teva respectfully requests that the Court grant Teva's request for a stay of discovery during the pendency of its forthcoming motion to dismiss other than the Phase 1 document productions Teva made in the D.N.J Cases.

Respectfully submitted,                s/   Matthew S. Borick

Matthew S. Borick
DOWNS RACHLIN MARTIN PLLC
Courthouse Plaza
199 Main Street, Suite 600
Burlington, VT 05401
(802) 863-2375
(802) 862- 7512
mborick@drm.com

*Of Counsel:*

Christopher T. Holding *(pro hac vice)*
Daryl L. Wiesen *(pro hac vice)*
Alicia Rubio-Spring *(pro hac vice)*
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1947
CHolding@goodwinlaw.com
DWiesen@goodwinlaw.com
ARubio-Spring@goodwinlaw.com

Brian T. Burgess *(pro hac vice)*
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
BBurgess@goodwinlaw.com

*Attorneys for Defendants*

Dated:  December 19, 2022

## <u>LOCAL RULE 7(a)(7) CERTIFICATION</u>

The undersigned certifies that counsel for Defendants contacted opposing counsel in good faith on December 9, 2022 to seek consent to the relief sought in the above motion.  On the same day, counsel for Plaintiffs responded that they oppose the motion.

___ /s/ Matthew S. Borick_____

21774905.1