# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| BLUE CROSS AND BLUE SHIELD OF VERMONT and THE VERMONT HEALTH PLAN, | : : : | |
| *Plaintiffs*, | : : | **Civil Action No. 5:22-cv-00159** |
| v. | : : | |
| TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., TEVA SALES AND MARKETING, INC., and TEVA NEUROSCIENCE, INC., | : : : : | |
| *Defendants*. | : : : | |

## DEFENDANT TEVA PHARMACEUTICAL INDUSTRIES LTD.'S MOTION TO <u>DISMISS FOR LACK OF PERSONAL JURISDICTION</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

    I.    Plaintiffs allege that Defendants engaged in a scheme to thwart generic
competition in the U.S. market. ....................................................................... 2

    II.   Teva Israel has no relevant contacts with Vermont ............................................... 3

LEGAL STANDARDS ................................................................................................. 4

ARGUMENT .............................................................................................................. 5

    I.    Plaintiffs do not identify any connection between Teva Israel and this
forum that could support personal jurisdiction. ................................................. 6

        A.    This Court lacks general jurisdiction over Teva Israel. ............................ 6

        B.    This Court lacks specific jurisdiction over Teva Israel. ........................... 7

            1.    The Complaint does not allege any contacts by Teva Israel
with Vermont. ............................................................................. 8

            2.    Exercising personal jurisdiction over Teva Israel also
would not comport with fair play and substantial justice. ........... 10

    II.   Plaintiffs have no legal basis to rely on contacts outside Vermont. .................... 11

        A.    The Clayton Act's nationwide service of process provision does
not apply here under Second Circuit precedent because Plaintiffs
have not established venue under Section 22 of the Clayton Act. ............ 12

        B.    Plaintiffs cannot use Rule 4(k)(2) to rely on nationwide contacts. .......... 15

    III.   There are no grounds for exercising personal jurisdiction over Teva Israel
on the basis of other entities' contacts with the forum. ...................................... 16

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aggrenox Antitrust Litig.*,
94 F. Supp. 3d 224 (D. Conn. 2015) .................................................................7, 10

*Agway, Inc. v. Brooks*,
790 A.2d 438 (Vt. 2001) ...............................................................................17

*Allen-Sleeper v. Fed. Express Corp.*,
2010 WL 3323660 (D. Vt. Apr. 14, 2010) .........................................................17, 19

*Aqua Shield, Inc. v. Inter Pool Cover Team*,
2007 WL 4326793 (E.D.N.Y. Dec. 7, 2007) ......................................................15

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
480 U.S. 102 (1987) ....................................................................................10, 11

*In re Auto. Refinishing Paint Antitrust Litig.*,
358 F.3d 288 (3d Cir. 2004) ...........................................................................13

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021) ...............................................................9

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
137 S. Ct. 1773 (2017) .................................................................................7

*Brown v. Lockheed Martin Corp.*,
814 F.3d 619 (2d Cir. 2016) ...........................................................................6, 7

*Chaiken v. VV Publ'g Corp.*,
119 F.3d 1018 (2d Cir. 1997) .........................................................................11

*Charles Schwab Corp. v. Bank of Am. Corp.*,
883 F.3d 68 (2d Cir. 2018) ............................................................................9

*City and County of San Francisco v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020) .............................................................16, 19

*Daewoo Elecs. Am. Inc. v. Opta Corp.*,
875 F.3d 1241 (9th Cir. 2017) ........................................................................19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ....................................................................................7

*Daniel v. Am. Bd. of Emergency Med.*,
    428 F.3d 408 (2d Cir. 2005)............................................................12, 13, 14, 15

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019)............................................................................8

*Dennis v. JPMorgan Chase & Co.*,
    343 F. Supp. 3d 122 (S.D.N.Y. 2018)...........................................................14

*DJ's Tree Serv. & Logging, Inc. v. Bandit Indus., Inc.*,
    557 F. Supp. 3d 511 (D. Vt. 2021).................................................................5

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003).....................................................................................16

*Fisher v. Teva PFC SRL*,
    212 F. App'x 72 (3d Cir. 2006) .....................................................................7

*In re Foreign Exch. Benchmark Rates Antitrust Litig.*,
    2016 WL 1268267 (S.D.N.Y. Mar. 31, 2016) ..............................................10

*Fox v. Fox*,
    106 A.3d 919 (Vt. 2014) ...............................................................................5

*Gallelli v. Crown Imports, LLC*,
    701 F. Supp. 2d 263 (E.D.N.Y. 2010) ..........................................................18

*Go–Video, Inc. v. Akai Elec. Co.*,
    885 F.2d 1406 (9th Cir. 1989) ......................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).................................................................................6, 8

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
    199 F.3d 1343 (D.C. Cir. 2000) ...................................................................13

*Hosain-Bhuiyan v. Barr Lab'ys, Inc.*,
    2017 WL 4122621 (S.D.N.Y. Sept. 14, 2017)...............................................7

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
    256 F.3d 548 (7th Cir. 2001) .......................................................................15

*Jack C. Keir, Inc. v. Robinson & Keir P'ship*, 560 A.2d 957 (Vt. 1989) .....................16

*Jackson v. Tanfoglio Giuseppe, S.R.L.*,
    615 F.3d 579 (5th Cir. 2010) .......................................................................16

*Jenkins v. Miller*,
    983 F. Supp. 2d 423 (D. Vt. 2013)................................................................6

*Keeton v. Hustler Mag., Inc.*,
   465 U.S. 770 (1984)..................................................................................9

*KM Enters., Inc. v. Glob. Traffic Techs., Inc.*,
   725 F.3d 718 (7th Cir. 2013) ..................................................................13

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   673 F.3d 50 (2d Cir. 2012).......................................................................5

*In re Lyondell Chem. Co.*,
   543 B.R. 127 (Bankr. S.D.N.Y. Jan. 4, 2016)...................................16, 17

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996)....................................................................4, 5

*Monkton Ins. Servs., Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ....................................................................6

*Palmieri v. Estefan*,
   793 F. Supp. 1182 (S.D.N.Y. 1992).......................................................18

*Pasquale v. Genovese*,
   392 A.2d 395 (Vt. 1978)..........................................................................17

*Porina v. Marward Shipping Co.*,
   2006 WL 2465819 (S.D.N.Y. Aug. 24, 2006) ........................................15

*Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*,
   2021 WL 2125357 (D. Vt. Jan. 13, 2021) ................................12, 13, 14

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
   230 F. Supp. 2d 403 (S.D.N.Y. 2002)....................................................18

*SPV Osus Ltd. v. UBS AG*,
   882 F.3d 333 (2d Cir. 2018).....................................................................8

*In re SSA Bonds Antitrust Litig.*,
   420 F. Supp. 3d 219 (S.D.N.Y. 2019).....................................................15

*Stutts v. De Dietrich Grp.*,
   465 F. Supp. 2d 156 (E.D.N.Y. 2006) ....................................................19

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013)......................................................................5

*Teva Pharm. Indus. v. Ruiz*,
   181 So. 3d 513 (Fla. Dist. Ct. App. 2015) ...............................................7

*United States v. Scophony Corp. of Am.*,
  333 U.S. 795 (1948) ...............................................................14

*In re Vt. Toy Works, Inc.*,
  135 B.R. 762 (Bankr. D. Vt. 1991) ...............................16, 17, 19

*Walden v. Fiore*,
  571 U.S. 277 (2014) .................................................................5

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) .....................................................8

*Whitener v. PLIVA, Inc.*,
  606 F. App'x 762 (5th Cir. 2015) ..............................................7

*Wolfe v. Enochian BioSciences Den. ApS*,
  2022 WL 656747 (D. Vt. Mar. 3, 2022) ...............................9, 11

## Statutes and Federal Rules

15 U.S.C. § 22 .......................................................................12, 14

28 U.S.C. § 1391 ..........................................................................13

12 V.S.A. § 913(b) .........................................................................5

Fed. R. Civ. P. 4(k)(1)(A) ..............................................................5

Fed. R. Civ. P. 4(k)(2) ......................................................12, 15, 16

Fed. R. Civ. P. 4(k)(2)(A) ............................................................15

**INTRODUCTION**

This case arises out of allegations that a set of Teva entities improperly sought to suppress generic competition in the U.S. market for Copaxone, a brand-name drug used to treat multiple sclerosis. Three of the four defendants—Teva Pharmaceuticals USA, Inc. ("Teva USA"), Teva Neurosciences, Inc. ("Teva Neuro"), and Teva Sales and Marketing Inc. ("Teva Sales")—are based in the United States. But the fourth, Teva Pharmaceuticals Industries Ltd. ("Teva Israel"), is an Israeli company with no connection to Vermont. Teva Israel does not have a physical presence in Vermont, it does not market Copaxone in Vermont, and it does not engage in advertising for Copaxone in Vermont. General jurisdiction plainly does not exist, because Teva Israel is incorporated and headquartered in Israel. And there is no specific jurisdiction in Vermont, because Teva Israel was not involved in the alleged activities in Vermont that give rise to this lawsuit.[1]

Plaintiffs try to justify the exercise of jurisdiction over Teva Israel on several bases, but they all fail. First, Plaintiffs allege that personal jurisdiction exists over all "Defendants" because "Defendants" conduct business in Vermont and avail themselves of the Vermont market. Compl. ¶ 20. But that statement—which improperly blurs together distinct corporate entities—is simply wrong as to Teva Israel. *See* Declaration of Brian Shanahan in Support of Teva Pharmaceutical Industries Ltd.'s Motion to Dismiss Under Rule 12(b)(2) ("Shanahan Decl.") ¶¶ 3-10, 21-22. Second, Plaintiffs refer to contacts that Teva Israel allegedly has "with the United States," Compl. ¶ 22, but under Second Circuit precedent, Plaintiffs cannot rely on a nationwide contacts theory here—they must show case-related, minimum contacts *with Vermont*, which they cannot do.

---

[1] Teva USA, Teva Neuro, and Teva Sales are separately moving to dismiss the entirety of the Complaint under Rule 12(b)(6). If this Court concludes that Teva Israel is subject to personal jurisdiction with respect to any of Plaintiffs' claims, Teva Israel then joins and incorporates by reference Defendants' Motion to Dismiss under Rule 12(b)(6).

Finally, Plaintiffs try to justify their disregard of the corporate form by alleging that Teva Israel is the alter ego of its U.S. Subsidiaries. Compl. ¶ 21. That gambit also fails, as Plaintiffs have not provided a sufficient factual basis to justify the extraordinary step of piercing the corporate veil in a manner that would allow this Court to exercise personal jurisdiction over Teva Israel by imputing the contacts of affiliates.

For these reasons, and as further explained below, this Court should dismiss the claims against Teva Israel for lack of personal jurisdiction.

## BACKGROUND

### I. Plaintiffs allege that Defendants engaged in a scheme to thwart generic competition in the U.S. market.

This action arises out of Teva USA's marketing and sale of the brand drug Copaxone, which is used to treat relapsing forms of multiple sclerosis. Compl. ¶ 51.[2] Teva USA first began selling Copaxone in March 1997. Compl. ¶ 56. It subsequently received approval to market Copaxone in 40 mg dosage form in January 2014. *Id.* ¶ 167.

Plaintiffs are a pair of health insurance companies that reimburse plan members for prescription drugs, and they seek to represent a putative class of third-party payors of Copaxone. Compl. ¶¶ 24-25, 251.

Presenting a laundry list of federal and state-law claims, Plaintiffs allege, often through improper group pleading, that Teva engaged in an anticompetitive scheme to delay and foreclose generic competition in the U.S. market for glatiramer acetate ("GA"), the active ingredient in Copaxone. *Id.* ¶ 9; *see also id.* ¶ 218 (identifying the "relevant geographic market" as "the United

---

[2] Because Plaintiffs often fail to distinguish among the Defendants, the motion uses "Teva" when necessary to reflect the Complaint's allegations, but otherwise refers to the relevant Teva entity. When it is unnecessary to distinguish among Teva's U.S. entities, the brief refers to Teva USA, Teva Neuro, and Teva Sales as "Teva USA" or "the U.S. affiliates."

States and its territories").  Specifically, Plaintiffs allege that "Teva":

- Endeavored to "delay the entry of generics" by asserting its patent rights and engaging with FDA on various issues surrounding classification and approval of GA products, *id.* ¶¶ 84-101;

- Took various steps to shift the market from 20 mg Copaxone to 40 mg Copaxone, *id.* ¶¶ 157-174;

- Engaged with medical professionals, staff, and patients to thwart generic substitution, *id.* ¶¶ 187-210;

- Contracted with pharmacy benefit managers and specialty pharmacies to incentivize sales of Teva's product, *id.* ¶¶ 163-69; and

- Devised an illegal kickback scheme that improperly used charitable donations to subsidize Medicare cost-sharing obligations for Copaxone, *id.* ¶¶ 122-135.

As the Court is aware, there are several earlier-filed putative class actions currently pending in the District of New Jersey against the same Teva Defendants—including Teva Israel, which has not contested personal jurisdiction in those cases.  *See* ECF No. 45 (Order on Motion to Transfer or Stay).

## II.  Teva Israel has no relevant contacts with Vermont.

Teva Israel is a corporation organized under the laws of Israel, with its headquarters and principal place of business in Israel.  Shanahan Decl. ¶ 2; Compl. ¶ 27.  Among other things, Teva Israel manufactures and sells finished pharmaceutical products for human consumption.  Shanahan Decl. ¶ 2.  Teva Israel is not qualified to do business in Vermont (or, for that matter, anywhere in the United States), nor has it filed or sought to file articles of incorporation or qualifications to do business in Vermont or any state in the United States at any time.  *Id.* ¶¶ 3-4.  Teva Israel also has no physical presence in Vermont:  It has no branch office or manufacturing facilities in Vermont, and it has never at any time owned, leased, possessed, or maintained any real or personal property, office, residence, or place of business in Vermont.  *Id.* ¶¶ 5-9.  Likewise, Teva Israel does not have a Vermont-based mailing address or telephone number.  *Id.* ¶ 5.  Teva Israel has not directed any

advertising regarding Copaxone specifically toward Vermont residents, or otherwise advertised Copaxone in any publications that are directed primarily toward Vermont residents. *Id.* ¶ 10. Finally, Teva Israel has never manufactured, promoted, sold, or distributed Copaxone in Vermont. *Id.* ¶ 21.

Teva Israel has many subsidiaries around the globe; these subsidiaries collectively have operations in approximately 60 countries in Asia, Europe, Latin America, the Middle East, and North America. *Id.* ¶ 11. One such subsidiary is Teva USA, a Delaware corporation with its principal place of business in New Jersey. *Id.* ¶ 12; Compl. ¶ 28. Teva Israel is the indirect parent company of Teva USA, which serves as Teva Israel's principal operating subsidiary in North America. Shanahan Decl. ¶ 12. Teva USA is, in turn, the parent company of Teva Neuro and Teva Sales, both Delaware corporations with their principal places of business in New Jersey. *Id.* ¶¶ 13-14; Compl. ¶¶ 29-30. Teva Israel, Teva USA, Teva Neuro, and Teva Sales observe separate corporate forms and maintain separate corporate headquarters. Shanahan Decl. ¶ 15. Teva Israel holds board meetings and maintains books and records separate and apart from Teva USA and its affiliates. *Id.* Teva Israel does not dominate, control, direct, or supervise the day-to-day operations of Teva USA, Teva Neuro, Teva Sales, or its employees. *Id.* ¶ 16.

Notably, over the course of the 118-page, 386-paragraph Complaint, Plaintiffs do not allege that Teva Israel has any connection with Vermont. Instead, the Complaint alleges only that "Teva" generally conducts business in Vermont, that Teva Israel derives revenue from Copaxone sales in Vermont, and that Teva Israel is the alter ego of its U.S. subsidiaries. These allegations are woefully insufficient to support the exercise of personal jurisdiction over Teva Israel.

## LEGAL STANDARDS

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v.*

*Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). The Court does "not draw argumentative inferences in the plaintiff's favor," and does not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted). A plaintiff's allegations may be accepted as true only "to the extent they are uncontroverted by the defendant's affidavits." *Id.* (citation omitted).

A plaintiff must satisfy three elements to establish personal jurisdiction over a defendant: (1) proper service of process, (2) "a statutory basis for personal jurisdiction that renders such service of process effective," and (3) a demonstration that "the exercise of personal jurisdiction [] comport[s] with constitutional due process principles." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012). Here, the only statutory basis for personal jurisdiction is Federal Rule of Civil Procedure 4(k)(1)(A), *see* pp. 12-15, *infra*, which directs courts to look "to the law of the forum state" to assess personal jurisdiction. *DJ's Tree Serv. & Logging, Inc. v. Bandit Indus., Inc.*, 557 F. Supp. 3d 511, 527 (D. Vt. 2021). Vermont's long-arm statute, 12 V.S.A. § 913(b), allows state courts to exercise jurisdiction over foreign defendants "to the full extent permitted by the Due Process Clause" of the federal Constitution. *Fox v. Fox*, 106 A.3d 919, 923 (Vt. 2014). Thus, here, the statutory and constitutional analyses "merge[]." *Metro. Life Ins. Co.*, 84 F.3d at 567. Constitutional due process principles require a court to establish that the nonresident defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (internal citation omitted).

## ARGUMENT

Plaintiffs have not alleged any facts tying Teva Israel, an Israeli corporation, to Vermont. Rather, Plaintiffs vaguely allege that Defendants, as a group, conduct business in Vermont and avail themselves of the Vermont market. That is plainly inadequate to establish personal

jurisdiction over Teva Israel. Nor do Plaintiffs have a basis to rely on contacts with the United States outside of Vermont. Instead, Plaintiffs allege that Teva Israel is the alter ego of its U.S. subsidiaries, and that the Court can exercise personal jurisdiction on that basis alone. But Plaintiffs again come nowhere near establishing an alter ego relationship—and, even if they could, that alone would not be sufficient under Vermont law. In short, Plaintiffs' attempts to establish personal jurisdiction by relying on group pleading and ignoring the corporate form fall short.

## I.     Plaintiffs do not identify any connection between Teva Israel and this forum that could support personal jurisdiction.

There are two types of personal jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiffs cannot establish personal jurisdiction under either framework.

### A.     This Court lacks general jurisdiction over Teva Israel.

General jurisdiction "permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). As a result, the "standard for general jurisdiction is demanding." *Jenkins v. Miller*, 983 F. Supp. 2d 423, 442 (D. Vt. 2013). A corporation is subject to general jurisdiction only where it is "at home," which—"except in a truly 'exceptional' case"—exists only where the corporation is "incorporated or maintains its principal place of business." *Brown*, 814 F.3d at 627 (citation omitted). Even where a corporation has some relationship with a state, "mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case." *Id.* at 629 (internal quotation marks omitted). In short, it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Id.* at 627 (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).

Under these principals, this Court lacks general jurisdiction over Teva Israel. Teva Israel is not incorporated in, qualified to do business in, or otherwise "essentially at home" in Vermont (or, for that matter, any state in the United States). Shanahan Decl. ¶¶ 3-4; *see also Fisher v. Teva PFC SRL*, 212 F. App'x 72, 75 (3d Cir. 2006) (affirming dismissal of a foreign Teva affiliate because it "did not maintain an office, employees, bank account, warehouse, or telephone listing in New Jersey").[3] Rather, as the Complaint recognizes, Teva Israel is incorporated in Israel and has its principal place of business there. Compl. ¶ 27. Teva Israel does not have a branch office or manufacturing operations in Vermont, nor does it own, lease, possess, or maintain any real or personal property, office, residence, or place of business in Vermont. Shanahan Decl. ¶¶ 5-9. Teva Israel thus has *no* relevant contacts with Vermont—let alone sufficient contacts to make this a "truly 'exceptional' case." *Brown*, 814 F.3d at 627.

### B. This Court lacks specific jurisdiction over Teva Israel.

Specific jurisdiction, or "case-linked" jurisdiction, exists only when "the suit" "aris[es] out of or relate[s] to the defendant's contacts with the forum"—here, Vermont. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (internal quotation marks omitted); *see also*

---

[3] *See also In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 256 (D. Conn. 2015) (holding that Teva Israel was not subject to general jurisdiction in Connecticut); *Hosain-Bhuiyan v. Barr Lab'ys, Inc.*, 2017 WL 4122621, at *3 (S.D.N.Y. Sept. 14, 2017) (holding that it is "plainly wrong" that there is general jurisdiction over Teva Israel in New York); *Whitener v. PLIVA, Inc.*, 606 F. App'x 762, 765 (5th Cir. 2015) (rejecting general jurisdiction over Teva Israel in Louisiana); *Teva Pharm. Indus. v. Ruiz*, 181 So. 3d 513, 521 (Fla. Dist. Ct. App. 2015) ("[N]either Teva USA nor Teva Industries [*i.e.*, Teva Israel] is incorporated in Florida or has its principal place of business here. Therefore, pursuant to *Daimler*, Florida does not have personal jurisdiction over either company.").

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) ("The exercise of specific jurisdiction depends on in-state activity that *gave rise to the episode-in-suit*.") (internal quotation marks omitted). Determining whether a court can exercise specific jurisdiction involves a "two-step analysis." *In re del Valle Ruiz*, 939 F.3d 520, 529 (2d Cir. 2019). "First, the court must decide if the individual or entity has 'purposefully directed his activities at … the forum and the litigation … arise[s] out of or relate[s] to those activities.'" *Id.* (citation omitted). "Second, the court must 'determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (citation omitted).

Plaintiffs' action against Teva Israel fails at each step. First, Plaintiffs fail to allege any contacts that Teva Israel has with Vermont. Second, requiring Teva Israel, an Israeli corporation, to defend itself in time-consuming and costly litigation in a Vermont court would not comport with principles of "fair play and substantial justice." *Id.* (citation omitted).

### 1. The Complaint does not allege any contacts by Teva Israel with Vermont.

To establish personal jurisdiction, the plaintiff must identify "some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (quoting *Goodyear*, 564 U.S. at 924). As a result, courts evaluate whether there is an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Goodyear*, 564 U.S. at 919 (internal quotation marks and brackets omitted). Plaintiffs have failed to make this necessary showing.

As an initial matter, Plaintiffs repeatedly lump Teva Israel with its domestic affiliates and refer to the Defendants collectively as "Teva." But a plaintiff cannot establish personal jurisdiction over a parent merely by collapsing the activities of "two distinct Defendants—a parent and a

wholly owned subsidiary . . . into one," as Plaintiffs seek to do here. *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018). With respect to personal jurisdiction, Plaintiffs allege that personal jurisdiction is proper because "Defendants" collectively "conduct business in Vermont, have purposefully directed their actions toward Vermont, and have sufficient minimum contacts with Vermont." Compl. ¶ 20. Plaintiffs repeat this group-pleading practice throughout the Complaint, alleging, for example, that "Teva" "devised a scheme to bypass … price controls," *id.* ¶ 111; "funneled over $300 million through non-profits that served as pass-through vehicles so that Teva could subsidize Medicare cost-sharing obligations," *id.* ¶ 125; and "implement[ed] its 'House Brand' strategy" to allegedly prevent generic substitution, *id.* ¶ 188. This use of group pleading is improper. Under longstanding Supreme Court precedent, "jurisdiction over each Defendant 'must be assessed individually.'" *Wolfe v. Enochian BioSciences Den. ApS*, 2022 WL 656747, at *5 (D. Vt. Mar. 3, 2022) (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984)). Thus, whether Teva Israel's contacts are sufficient to support the exercise of personal jurisdiction must turn on allegations about Teva Israel specifically. *See id.*; *see also Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 397 (S.D.N.Y. 2021) (rejecting a group pleading "tactic" as "plainly impermissible to satisfy Plaintiffs' burden to establish a prima facie case of personal jurisdiction against *each* Defendant as to *each* claim asserted").

The scattered allegations in the Complaint directed specifically to Teva Israel fall well short of establishing specific jurisdiction, as Plaintiffs do not identify *any* contacts arising out of their claims that connect Teva Israel to Vermont. Nor could they: Teva Israel has never manufactured, promoted, sold, or distributed Copaxone in Vermont. *See* Shanahan Decl. ¶ 21. Teva Israel has likewise not made any representations regarding Copaxone or GA to medical professionals or patients in Vermont. *Id.* ¶ 22. Finally, Teva Israel does not hold, and has never

held, a New Drug Application for Copaxone—and even if it had, this conduct would not relate to Vermont specifically. *Id.* ¶¶ 19-20. Nor do Plaintiffs allege that Teva Israel has ever filed suit in Vermont to enforce any patent right associated with Copaxone or submitted any regulatory filing concerning Copaxone in Vermont. Teva Israel thus has not taken *any* action in (or directed at) Vermont in a manner that would allow for the exercise of specific jurisdiction in this case.

Faced with similar circumstances, courts in this Circuit have rejected assertions of specific jurisdiction against foreign corporate parents that have no connection to the suit—including in other antitrust suits just like this one, in which the plaintiffs tried to join Teva Israel to an action challenging a patent settlement involving its affiliates. *See In re Aggrenox*, 94 F. Supp. 3d at 257 (holding that there was no specific jurisdiction over Teva Israel, because "[a]part from the bare, conclusory assertion that Teva Israel joined the antitrust conspiracy, the complaints do not allege any action by the Israeli company that is specifically in connection with this case"); *see also In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 2016 WL 1268267, at *7 (S.D.N.Y. Mar. 31, 2016) (no specific jurisdiction over foreign parent company where allegations were limited to actions taken by the U.S.-based subsidiary). The same result is called for here.

### 2. Exercising personal jurisdiction over Teva Israel also would not comport with fair play and substantial justice.

In addition to the absence of minimum contacts between Teva Israel and the forum, exercising personal jurisdiction over Teva Israel would "offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113 (1987) (internal quotation marks omitted). Following the Supreme Court, this court evaluates five factors in determining whether it is reasonable to exercise personal jurisdiction over a foreign defendant: "[1] the burden on the defendant, [2] the forum State's interest in adjudicating the dispute, [3] the plaintiff's interest in obtaining convenient and effective relief, [4] the interstate judicial system's

interest in obtaining the most efficient resolution of controversies, and [5] the shared interest of the several States in furthering fundamental substantive social policies." *Wolfe*, 2022 WL 656747, at *9. "[T]he weakness of plaintiff's showing of minimum contacts places greater emphasis on the reasonableness of exercising jurisdiction." *Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1030 (2d Cir. 1997).

These factors compel dismissal here. Forcing Teva Israel to litigate this case in Vermont would impose a significant and unreasonable burden on it, a foreign company. As the Supreme Court has explained, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114. Thus, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field," and courts should be reluctant "to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State." *Id.* at 115. Here, the exercise of "care and reserve" favors dismissal, as (1) Teva Israel was not involved in the alleged unlawful conduct, and (2) Plaintiffs do not need to sue Teva Israel in this forum to secure relief from the other defendants. Plaintiffs have made no allegation to the contrary or otherwise explained why it must include Teva Israel in this suit.

## II.     Plaintiffs have no legal basis to rely on contacts outside Vermont.

Implicitly recognizing that Teva Israel lacks any suit-related contacts with this forum, Plaintiffs instead assert that personal jurisdiction over Teva Israel is proper because Teva Israel "has sufficient minimum contacts with *the United States*." Compl. ¶ 22 (emphasis added). Plaintiffs thus point, for example, to lawsuits involving Copaxone that Teva Israel filed in New Jersey and the District of Columbia, as well as regulatory dealings with federal agencies (all located outside of Vermont). *Id.*; *see also* ECF No. 45 at 16 (summarizing allegations). The

Complaint also alleges more generally that Teva Israel "avails itself of U.S. markets significantly through the promotion, marketing, and sale" of Copaxone. *Id.*

As this Court recognized in its transfer order, "in the Third Circuit" Plaintiffs could establish personal jurisdiction over Teva Israel by relying on the Clayton Act, "which includes a provision for nationwide service of process" in federal antitrust claims. ECF No. 45 at 16. But Second Circuit precedent *directly conflicts* with Third Circuit precedent on this issue. As explained below, under Second Circuit precedent, Plaintiffs have not satisfied the Clayton Act venue predicate needed to invoke a nationwide contacts theory. Nor do they have any basis to rely on nationwide contacts under Federal Rule of Civil Procedure 4(k)(2).

A.    **The Clayton Act's nationwide service of process provision does not apply here under Second Circuit precedent because Plaintiffs have not established venue under Section 22 of the Clayton Act.**

In the Second Circuit, a nationwide contacts analysis does *not* automatically apply in every antitrust case against a corporation. *See Shat Acres Highland Cattle, LLC v. Am. Highland Cattle Ass'n*, 2021 WL 2125357, at *3 (D. Vt. Jan. 13, 2021). Rather, the plaintiff must first establish venue under section 12 of the Clayton Act. *See Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir. 2005). Plaintiffs fail to do so here.

Section 12 of the Clayton Act states:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22. "As this language makes plain, the section consists of two parts." *Daniel*, 428 F.3d at 422. "The part before the semicolon addresses venue, permitting antitrust actions against corporations to be maintained 'not only in the judicial district whereof [the corporate defendant] is an inhabitant, but also in any district wherein it may be found or transacts business.'" *Id.* "The

part after the semicolon provides for worldwide service of process and, therefore, the exercise of personal jurisdiction 'in such cases.'" *Id.*

There is a circuit split on the proper interpretation of this provision of the Clayton Act, and specifically how the two parts of Section 12 interact. *See generally KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 726-728 (7th Cir. 2013) (describing the circuit split). The Third Circuit (along with the Ninth Circuit) holds that "the service of process provision on foreign corporations is independent of, and does not require satisfaction of, the specific venue provision under Section 12 of the Clayton Act." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 297 (3d Cir. 2004).[4] In those circuits, personal jurisdiction "is assessed on the basis of a defendant's aggregate contacts with the United States as a whole," *regardless* of whether the plaintiff establishes venue under the Clayton Act or under the general venue statute. *Id.* at 298-299. By contrast, in the Second Circuit, the Seventh Circuit, and the D.C. Circuit, Section 12's worldwide service of process provision "may be invoked to establish personal jurisdiction *only* when the requirements of the section's venue provision are satisfied." *Daniel*, 428 F.3d at 424-425 (emphasis added).[5] If a plaintiff "wishes to establish venue exclusively through [28 U.S.C. §] 1391," the general venue statute, "she must establish personal jurisdiction some other way." *KM Enters.*, 725 F.3d at 730; *accord Shat*, 2021 WL 2125357, at *3-4.

Plaintiffs do not even try to establish venue under the Clayton Act—they conspicuously rely *only* on the general venue statute, 28 U.S.C. § 1391. *See* Compl. ¶ 23. As a result, Plaintiffs cannot rely on nationwide contacts under the Clayton Act to establish personal jurisdiction.

Nor could Plaintiffs belatedly invoke Section 12 in response to this motion. Teva Israel

---

[4] *See also Go–Video, Inc. v. Akai Elec. Co.,* 885 F.2d 1406, 1409-1410 (9th Cir. 1989).

[5] *See also KM Enters.*, 725 F.3d at 730; *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1351 (D.C. Cir. 2000).

plainly is not an "inhabitant" of Vermont, so Plaintiffs would need to show that Teva Israel is "found" in or "transacts business" in Vermont. 15 U.S.C. § 22. The broader of those two concepts is "transacts business," which requires a showing that the defendant's "contacts with the venue district could fairly be said to evidence the 'practical, everyday business or commercial concept of doing business or carrying on business of any substantial character.'" *Daniel*, 428 F.3d at 429 (quoting *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948)). "For a corporate defendant to transact business of a 'substantial character' in a particular judicial district, there must be 'some amount of business continuity and certainly more than a few isolated and peripheral contacts with [that] district.'" *Shat*, 2021 WL 2125357, at *4 (citation omitted). Moreover, "[a]llegations that certain of these defendants are parent companies of subsidiaries that transact business in [the District] do not suffice." *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 199 (S.D.N.Y. 2018).

Here, as explained, pp. 8-10, *supra*, Teva Israel does not transact business in Vermont: it has no physical presence in Vermont, is not qualified to do business in Vermont, and does not direct advertising toward Vermont. *See* Shanahan Decl. ¶¶ 3-10, 21-22; *see Shat*, 2021 WL 2125357, at *4 (finding no venue in Vermont where the defendant was "not registered to do business in Vermont, does not have an office in Vermont, and employs no registered agent to carry on its operations in Vermont."). Nor has Teva Israel ever manufactured, promoted, sold, or distributed Copaxone in Vermont, Shanahan Decl. ¶ 21, and the Complaint's conclusory allegation that Teva Israel "derives substantial revenue from Copaxone sales in the United States, including from Vermont," Compl. ¶ 42, is insufficient to show that it transacts business there. *See Daniel*, 428 F.3d at 429 (defendant's receipt of "an unspecified amount of … revenue" from a particular district did not establish venue). In sum, the Complaint identifies *no* business activities undertaken

by Teva Israel in Vermont, pp. 8-10, *supra*—much less activities of such a "substantial character," *Daniel*, 428 F.3d at 429, that they rise to the level of transacting business for purposes of venue.

**B.    Plaintiffs cannot use Rule 4(k)(2) to rely on nationwide contacts.**

Plaintiffs also cannot rely on Federal Rule of Civil Procedure 4(k)(2), which "acts as a federal long-arm statute" for certain claims arising under federal law. *See Aqua Shield, Inc. v. Inter Pool Cover Team*, 2007 WL 4326793, at *5 (E.D.N.Y. Dec. 7, 2007). Rule 4(k)(2) only applies if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction." Fed. R. Civ. P. 4(k)(2)(A). Thus, to invoke Rule 4(k)(2), Plaintiffs "need to certify that the foreign defendants are not subject to jurisdiction in any other state." *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 240 (S.D.N.Y. 2019). Moreover, even if the plaintiff does so certify, the availability of personal jurisdiction in another state court can be established by the defendant's consent: "A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001); *accord Porina v. Marward Shipping Co.*, 2006 WL 2465819, at *4 (S.D.N.Y. Aug. 24, 2006) (Rule 4(k)(2) is not available if the defendant "concede[s] that it is subject to personal jurisdiction in some other state"), *aff'd*, 521 F.3d 122 (2d Cir. 2008).

Here, Rule 4(k)(2) does not apply because, as this Court already held, Teva Israel "is subject to personal jurisdiction in the District of New Jersey in this federal antitrust suit." ECF No. 45 at 16. Moreover, Teva Israel has not contested personal jurisdiction in the parallel proceedings in New Jersey and would not have done so in this action had Plaintiffs also chosen to file there. Because, under this Court's prior ruling, Teva Israel *is* subject to personal jurisdiction in New Jersey for the allegations in this Complaint, it *cannot* be subject to personal jurisdiction in Vermont through Rule 4(k)(2).

**III.    There are no grounds for exercising personal jurisdiction over Teva Israel on the basis of other entities' contacts with the forum.**

Having failed either to identify any contacts between Teva Israel and Vermont or to justify their resort to nationwide contacts, Plaintiffs are left with their "[a]lternative[]" theory that Teva Israel is an "alter ego" of its U.S. affiliates.  Compl. ¶ 21; *see also id.* ¶¶ 32-42.  Plaintiffs generally allege that Teva Israel describes itself as "a single, 'global' entity," *id.* ¶ 33, with Teva Israel "controlling the activities of Teva USA," *id.* ¶ 36.  Plaintiffs also rely on the inapplicable decision in *City and County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 636-637 (N.D. Cal. 2020), to allege that Teva Israel exercises "substantial control over [its] subsidiaries' marketing, administration, manufacturing, research and development, purchase of supplies, finance, and other significant supporting operations conducted in shared and commingled assets." Compl. ¶ 35 (internal quotation marks omitted).  These conclusory assertions are insufficient to treat Teva Israel as a stand-in for its U.S. affiliates, which are distinct corporate entities.

Vermont courts "exercise th[e] power" to pierce the corporate veil "reluctantly, and only when necessary to prevent fraud or injustice."  *In re Vt. Toy Works, Inc.*, 135 B.R. 762, 770 (Bankr. D. Vt. 1991) (discussing *Jack C. Keir, Inc. v. Robinson & Keir P'ship*, 560 A.2d 957 (Vt. 1989)); *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) ("[T]he doctrine of piercing the corporate veil … is a rare exception, applied in the case of fraud or certain other exceptional circumstances.").[6]  The mere "total ownership and resulting control of a corporation subject to

---

[6] Courts are divided over whether state or federal law governs the alter ego analysis for purposes of jurisdiction. *See e.g.*, *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 587 (5th Cir. 2010) (explaining that "this complicated choice of law question is an open issue"); *see also In re Lyondell Chem. Co.*, 543 B.R. 127, 139 (Bankr. S.D.N.Y. Jan. 4, 2016) (collecting cases).  But as courts have often concluded, the result is the same regardless of the applicable law.  *See In re Lyondell*, 543 B.R. at 139.  Like Vermont law, federal law recognizes "that as long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other."  *Id.* at 141 (internal quotation marks omitted).  Applying that principle here, Plaintiffs have plainly failed to allege an alter-ego relationship.

state jurisdiction, by another corporation," is "not sufficient of itself" to establish jurisdiction based on an alter ego theory. *Pasquale v. Genovese*, 392 A.2d 395, 398 (Vt. 1978). Rather, courts consider factors that go well beyond mere ownership and affiliation, including "using the corporation to perpetrate a fraud; the personal use of corporate funds; the failure to observe corporate formalities; and undercapitalization." *In re Vt. Toy Works*, 135 B.R. at 770. Thus, Plaintiffs must present "evidence that either corporation fails to observe corporate formalities, or that [the subsidiary] is a mere shell corporation in Vermont, existing for the sole purpose of carrying out [the parent's] directives, evading creditors, or perpetuating a fraud." *Allen-Sleeper v. Fed. Express Corp.*, 2010 WL 3323660, at *5 (D. Vt. Apr. 14, 2010). "In the absence of such evidence," plaintiffs have "failed to shoulder [their] heavy burden of establishing that the corporate veil should be pierced." *Id.*

Applying these principles here, Plaintiffs have alleged no facts suggesting that any of Teva Israel's subsidiaries are alter egos of Teva Israel. To start, Plaintiffs do not even attempt to allege "a lack of corporate formality," where Teva Israel's affiliates are "mere corporate strawm[e]n … without assets, capital, or purpose beyond evading contract liability." *Agway, Inc. v. Brooks*, 790 A.2d 438, 442 (Vt. 2001); *see also Allen-Sleeper*, 2010 WL 3323660, at *5. Nor could they, as Teva Israel maintains a corporate form and identity separate from Teva USA, Teva Sales, and Teva Neuro. Shanahan Decl. ¶ 15. The companies also have distinct operations: Teva Israel holds its own board meetings, maintains separate books and records, and has its own accounts of individual corporate assets and liabilities. *Id.* Teva Israel also maintains separate headquarters from Teva USA, Teva Sales, and Teva Neuro. *Id.*

The allegations Plaintiffs do make apply to any parent-subsidiary relationship. Plaintiffs allege, for example, that Teva Israel "describes itself as a single, 'global' entity" consisting of "one

commercial organization." Compl. ¶¶ 33-34. The Second Circuit has already rejected an attempt

to extend personal jurisdiction on this basis. In *Jazini v. Nissan Motor Co.*, the court explained

that statements about Nissan becoming a "truly global company" did not provide a basis for

exercising personal jurisdiction over Nissan Japan through its New York subsidiaries. 148 F.3d

181, 185 (2d Cir. 1998). If "a request for world-wide cooperation" were sufficient, courts would

routinely be required to exercise jurisdiction over foreign corporations with minimal connection

to the forum state. *Id.* Likewise, Plaintiffs allege that Teva Israel and its subsidiaries "share

employees and corporate officers, with Teva [Israel] controlling the activities of Teva USA."

Compl. ¶ 36.[7] But, again, "overlapping officers and directors are intrinsic to the parent-subsidiary

relationship," and therefore do not provide a basis for piercing the corporate veil. *In re Ski Train

Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 403, 412 (S.D.N.Y. 2002) (internal

quotation marks omitted); *see also Gallelli v. Crown Imports, LLC*, 701 F. Supp. 2d 263, 273-74

(E.D.N.Y. 2010) ("common directors and officers is a normal business practice of a multinational

corporation").

Plaintiffs also suggest that it is relevant that Teva Israel has implemented global policies

relating to regulatory compliance. Compl. ¶ 39. Once again, that is wrong as a legal matter, even

if it were true factually: "[A] parent of a multinational corporate enterprise may make broad policy

decisions for its subsidiaries" without providing a basis for piercing the corporate veil. *Palmieri

v. Estefan*, 793 F. Supp. 1182, 1189 (S.D.N.Y. 1992) (citation omitted). Multinational

corporations that distribute through national or regional subsidiaries understandably want to ensure

that their "products and services meet uniform company standards," but that desire for quality

---

[7] Notably, Plaintiffs allege that a Teva USA employee "coordinated and directed advocacy, lobbying, and policy developments across the entire Teva group of companies," Compl. ¶ 36, undercutting their assertion that Teva Israel controls its U.S. affiliates.

control and uniformity does not establish an alter ego relationship. *Stutts v. De Dietrich Grp.*, 465 F. Supp. 2d 156, 164 (E.D.N.Y. 2006). Moreover, regardless of whether Teva Israel has implemented broad policies for all of its subsidiaries on issues of regulatory compliance, Teva Israel does not dominate, control, direct, or supervise the day-to-day operations of any of the U.S. subsidiaries. Shanahan Decl. ¶ 16.

In sum, the allegations in this case bear no resemblance to cases where Vermont courts have "reluctantly" pierced the corporate veil. *In re Vt. Toy Works*, 135 B.R. at 770.[8] To the contrary, Plaintiffs' allegations describe a mine-run multinational parent-subsidiary relationship. There are no allegations whatsoever that the Defendants do not observe corporate formalities, or that the U.S. affiliates are merely shells of Teva Israel. Absent any evidence of this kind, Plaintiffs have failed to establish an alter-ego relationship. *Allen-Sleeper*, 2010 WL 3323660, at *5.

## CONCLUSION

For the foregoing reasons, Teva Israel respectfully requests that the Court grants its motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.

---

[8] In *Purdue Pharma*, a tort case unrelated to Copaxone, the district court determined that the plaintiffs raised sufficient "questions of fact" in their allegations as to whether Teva Israel "and its U.S. subsidiaries lack separate personalities, and thus, are unified in interests and ownership" to justify veil-piercing for jurisdictional purposes. 491 F. Supp. 3d at 637-38. In doing so, the court applied Ninth Circuit precedent relying on California law on veil piercing. *Id.* at 636-37 (discussing *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1249-50 (9th Cir. 2017)). Because it applies California law, the *Purdue Pharma* decision carries no weight here. California courts apply an amorphous nine-factor test that, unlike Vermont law, does not strictly require a finding "that either corporation fails to observe corporate formalities, or that [the subsidiary] is a mere shell corporation." *Allen-Sleeper*, 2010 WL 3323660, at *5. Moreover, unlike in *Purdue Pharma*, Plaintiffs have not identified any prejudice they would suffer if they were unable to pursue Teva Israel in this lawsuit—particularly because they, like the plaintiffs in the parallel cases, could have chosen to file suit against Teva Israel in the District of New Jersey. *See Purdue Pharma*, 491 F. Supp. 3d at 638 (discussing the plaintiffs' allegations that Teva Israel "abuses the corporate form by using its subsidiaries as shells to prevent the City's recovery").

Respectfully submitted,          *s/* Matthew S. Borick
                                 Matthew S. Borick
                                 DOWNS RACHLIN MARTIN PLLC
                                 Courthouse Plaza
                                 199 Main Street, Suite 600
                                 Burlington, VT 05401
                                 (802) 863-2375
                                 (802) 862- 7512
                                 mborick@drm.com

                                 *Of Counsel:*

                                 Christopher T. Holding *(pro hac vice)*
                                 Daryl L. Wiesen *(pro hac vice)*
                                 Alicia Rubio-Spring *(pro hac vice)*
                                 GOODWIN PROCTER LLP
                                 100 Northern Avenue
                                 Boston, MA 02210
                                 (617) 570-1947
                                 CHolding@goodwinlaw.com
                                 DWiesen@goodwinlaw.com
                                 ARubio-Spring@goodwinlaw.com

                                 Brian T. Burgess *(pro hac vice)*
                                 GOODWIN PROCTER LLP
                                 1900 N Street, NW
                                 Washington, DC 20036
                                 (202) 346-4000
                                 BBurgess@goodwinlaw.com

                                 *Attorneys for Defendants*

Dated:  December 21, 2022