UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

BLUE CROSS AND BLUE SHIELD OF VERMONT and THE VERMONT HEALTH PLAN,

    Plaintiffs,

v.

TEVA PHARMACEUTICAL INDUSTRIES, LTD., TEVA PHARMACEUTICALS USA, INC., TEVA SALES AND MARKETING, INC., and TEVA NEUROSCIENCE, INC.,

    Defendants.

Civil Action No. 5:22-cv-00159-gwc

## STIPULATED DISCOVERY SCHEDULE/ORDER

The parties submit the following Discovery Schedule pursuant to Local Rule 26(a)(2). Subsequent to Teva's filing of its motion to stay discovery (ECF 47), the parties agreed on this joint proposal that incorporates a partial stay of discovery pending the Court's ruling on Teva's motion to dismiss. If the Court adopts the parties' proposal, Teva's motion is withdrawn as moot. If the Court does not adopt the parties' proposal, plaintiffs will file their response to Teva's motion fourteen days after the Court's ruling.

### INTRODUCTION

1. In this case, discovery may be needed on the following subjects:

   a. **General**

   **Plaintiffs' Position:**

   - Defendants' corporate structure and relationships;

   - Defendants' financial status, including annual reports, financial statements, including

1

revenue and profits from Copaxone;

- Defendants' pricing of Copaxone, pricing strategy relating to Copaxone, rebating strategies for Copaxone, and investments in Copaxone and its various dosages;

- Defendants' relationships and communications with specialty pharmacies, pharmacy benefit managers, and non-profit foundations;

- Defendants' "House Brand" strategy;

- Defendants' purported donations to non-profit foundations providing copay assistance to Copaxone patients and financial relationships with the entities identified in the Complaint;

- Defendants' relationships with prescribers of Copaxone and efforts to influence prescribing and/or dispensing decisions relating to Copaxone and/or generic glatiramer acetate, including Defendants' efforts to influence physicians to write Copaxone prescriptions with the "dispense as written" notation;

- Defendants' marketing of Copaxone and communications regarding same;

- Defendants' efforts to convert Copaxone patients from a 20 mg (daily) dosage to 40 mg (thrice weekly) dosage, including Defendants' research, strategy, communications relating to the same;

- Defendants' utilization of citizen petitions, patent litigation, and other efforts to delay the entry of generic competition to Copaxone;

- Defendants' copay assistance programs for Copaxone, including Defendants' "Shared Solutions" program;

- Defendants' intent and disclosures in providing funding to non-profit foundations

providing copay assistance to Medicare recipients;

- Defendants' share of the market for glatiramer acetate;
- The number of transactions and class members affected; and
- The measure of individual and class-wide damages.

**Defendants' Position:**

The scope of discovery is dependent on the outcome of Teva's pending motions, including its Motion to Dismiss (ECF 49) and Motion to Stay Discovery (ECF 47). Even if Teva's Motion to Dismiss is granted only in part, the scope of discovery may be substantially narrowed both with respect to the factual issues to be addressed as well as the relevant time period. As a result, Teva cannot detail what discovery may be needed into Teva's own practices until following a ruling on its Motion.

Teva further notes that, once the parties agree on an appropriate confidentiality order, Teva has agreed to provide its productions to date in the New Jersey actions which may address Plaintiffs' discovery requests, in whole or in part. To date, Teva has produced almost 300,000 documents, and almost one million pages in Phase 1 of discovery in the New Jersey action relevant to the allegations in these related cases, including (i) materials previously produced to Congress as part of the Congressional investigation into drug pricing; (ii) materials previously provided to the Department of Justice as part of investigation into Teva's conduct as it relates to Copaxone, including materials produced in connection with *United States v. Teva Pharmaceuticals USA, Inc.*, No. 1:20-cv-11548 (D. Mass.) and *United States ex. rel. Charles Arnstein & Hossam Senousy v. Teva Pharmaceuticals USA, Inc.*, No. 1:13-cv-03702 (S.D.N.Y.); and (iii) materials previously produced to the Food and Drug Administration in connection with Teva's Citizen

Petitions in connection with Copaxone. Teva respectfully submits that further discovery should be deferred pending the resolution of its Motions, as set forth in more detail below.

Nevertheless, if Teva's Motion to Dismiss is not granted in full, then depending on which claims survive the ruling, Teva anticipates discovery may be needed on some or all of the following subjects, at a minimum:

- Copaxone, GA, Glatopa, and other generic forms of Copaxone
- The relevant market in which Copaxone and generic GA products compete, including the parties' assessment of the competitive landscape
- Research and development of Copaxone, GA, Glatopa, and other generic forms of Copaxone, including the FDA approval process and any challenges to the same
- Correspondence with the FDA or other governmental bodies regarding generic Copaxone, including but not limited documents concerning the timing of approval for generic GA products
- The effects, or lack thereof, of any litigation filed by Teva in delaying FDA's approval of generic GA products
- The effects, or lack thereof, of any citizen petition submitted by Teva in delaying FDA's approval of generic GA products
- Pricing, rebating, marketing and promotion of Copaxone, GA, Glatopa, and other generic forms of Copaxone, as well as other products in the relevant market
- Agreements with Pharmacy Benefit Managers and payors, like Plaintiffs here, and the negotiations of the same
- Actual and forecasted sales of Copaxone, GA, Glatopa, and other generic forms of Copaxone
- Institutional dynamics in the healthcare marketplace that made Teva's Copaxone

4

   more attractive to purchasers than generic GA products

- Teva's allegedly false statements about generic GA products and services, including any evidence of such statements and analysis of any effect of such statements

- Complaints or concerns about generic GA products for any reason, including efficacy, side effects, difficulty with operation of auto-injectors, auto-injector failures, needle problems, adverse event reporting, and pharmacovigilance issues, among others

- Patient assistance programs offered for Copaxone, GA, Glatopa, and other generic forms of Copaxone and any patient assistance programs offered for any generic GA products, including copay coupons, copay cards, or any other program

- Generic manufacturers' effort to encourage doctors to prescribe products with "Dispense as Written" instructions for generic GA and any other products

This list is not exhaustive and Teva reserves the right to supplement or modify this list in any way in response to the Court's ruling on Teva's Motion to Dismiss or otherwise. Teva anticipates that substantial discovery will be required from third parties, including without limitation companies that filed ANDAs for generic GA, other payors, and PBMs, among others.

In addition, to the extent Plaintiffs seek discovery on issues that are not relevant, such discovery should not be permitted regardless of the outcome on Teva's Motion to Dismiss. Such issues could include irrelevant proceedings, including in jurisdictions outside the United States.

**b. Phased Discovery**

Unless noted here to the contrary and in more detail, the parties agree that discovery in

5

this matter shall not be conducted in phases or limited to particular, enumerated issues.

To keep this case moving forward efficiently, including to keep pace with the discovery that is occurring in the Copaxone-related cases pending in the District of New Jersey, the parties agree to proceed with the following limited discovery while Teva's Motion to Dismiss is pending: (i) the parties will make initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before December 23, 2022; (ii) the parties will negotiate a confidentiality order; (iii) the parties will negotiate a protocol for the production of electronically stored information ("ESI"); and (iv) Teva will produce the "Phase 1" materials that Teva produced in the District of New Jersey cases (described in detail below) once an appropriate confidentiality order has been put in place.

The parties agree that all other discovery shall be stayed until this Court rules on Teva's Motion to Dismiss, except as follows: If further discovery proceeds in the District of New Jersey actions, the parties agree that Teva will take steps to ensure that discovery in this case keeps pace with discovery in the District of New Jersey cases and that plaintiffs in this action are placed in the same position as the New Jersey plaintiffs.

### c. Coordination of Discovery and Phase 1 Production

The "Phase 1" production referenced above contains 294,284 documents comprising the following: (i) materials produced to Congress as part of the Congressional investigation into drug pricing; (ii) materials provided to the Department of Justice as part of its investigation into Teva's conduct as it relates to Copaxone, including materials produced in connection with *United States v. Teva Pharmaceuticals USA, Inc.*, No. 1:20-cv-11548 (D. Mass.) and *United States ex. rel. Charles Arnstein & Hossam Senousy v. Teva Pharmaceuticals USA, Inc.*, No. 1:13-cv- 03702 (S.D.N.Y.); and (iii) materials produced to the Food and Drug Administration in connection with Teva's Citizen Petitions in connection with Copaxone. The "Phase 1"

materials were reviewed by Teva for relevancy to the *Mylan* action pending in the District of New Jersey and Teva additionally applied redactions on the basis of relevance regarding products other than Copaxone to protect Teva's sensitive information. By agreeing to receive an initial production of the "Phase 1" documents as they were produced in the District of New Jersey cases, Plaintiffs reserve all rights to seek additional discovery relevant to the above referenced government investigations, to challenge Teva's relevancy determinations, and to challenge any and all redactions applied by Teva.

2. ESI Protocol: The parties have conferred about disclosure, discovery, and preservation of electronically stored information ("ESI"). Unless noted otherwise, ESI shall be produced in the following format(s): The parties have agreed to meet and confer and submit a joint ESI protocol within 45 days.

3. Protective/Confidentiality Order: The parties have conferred about claims of privilege and claims of protection as trial-preparation materials. The parties have agreed on the following procedure to assert these claims after production: The parties have agreed to meet and confer and submit joint procedures for asserting claims of privilege and protection as trial-preparation material within 45 days.

4. Modification to Federal Rules Limits: Any changes in the limitations on discovery imposed under the Federal Rules of Civil Procedure or the Local Rules for this District shall be specifically described below.

- Plaintiffs collectively may serve 35 interrogatories, and Defendants may collectively serve 35 interrogatories, without leave of court.
- Each side may collectively notice 25 depositions, both party and non-party, without leave of court.

## DEADLINES

5. The parties shall serve initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on or before_ December 23, 2022_____.

6.-22. For ease of reference, the Parties' respective proposed deadlines for items 6-22 are included below along with some additional proposed deadlines.[1]

|  | Event | Plaintiffs' Proposal | Defendants' Proposal |
|---|---|---|---|
| 6. | Deadline to serve all interrogatories and requests for production | 5 months from the Court's ruling on the Motion to Dismiss. The parties agree to produce documents on a rolling basis | 60 days from the Court's ruling on the Motion to Dismiss |
| 7. | Substantial completion of production shall take place | 7 months from the Court's ruling on the Motion to Dismiss. | 15 months from the Court's ruling on the Motion to Dismiss |
| 8. | Completion of production of documents shall take place | 9 months from the Court's ruling on the Motion to Dismiss. | 18 months from the Court's ruling on the Motion to Dismiss |
| 9. | Depositions of all non-expert witnesses shall be completed | 11 months from the Court's ruling on the Motion to Dismiss. | 18 months from the Court's ruling on the Motion to Dismiss |
| 10. | Plaintiffs file motion for class certification no later than | 17 months from the Court's ruling on the Motion to Dismiss (i.e., 1 month after the close of discovery - see below) | 4 weeks after the close of fact discovery |

---

[1] Teva's proposed schedule here is consistent with the schedule it proposed on the District of New Jersey cases. That court, where motions to dismiss also are pending, has deferred entering a schedule to date, other than for the Phase 1 discovery.

8

| 11. | Defendants file opposition to Plaintiffs' motion for class certification | 2 months from Plaintiffs' filing of their motion for class certification | |
|---|---|---|---|
| 12. | Plaintiffs file replies in support of motion for class certification | 1 month from Defendants' filing of their opposition to Plaintiffs' motion for class certification | |
| 13. | Plaintiff shall submit merits expert witness reports | 12 months from the Court's ruling on the Motion to Dismiss | 8 weeks after the deadline to complete briefing on class certification |
| 14. | Depositions of Plaintiffs' merits expert witnesses shall be completed | 4 weeks after Defendants' deadline to submit expert reports | |
| 15. | Defendant shall submit merits expert witness reports | 4 weeks after Plaintiffs' deadline to submit expert reports | |
| 16. | Depositions of Defendant's merits expert witnesses shall be completed | 4 weeks after Defendants' deadline to submit expert reports | |
| 17. | The Early Neutral Evaluation session shall be conducted | on a date to be determined by the parties. The parties shall determine the date for the ENE session and report it to the Court on or before June 1, 2023. The parties have agreed that they will select a neutral evaluator no later than June 1, 2023. | |
| 18. | The parties shall serve all requests for admission on or before | 15 months from the Court's ruling on the Motion to Dismiss | 18 months from the Court's ruling on the Motion to Dismiss |
| 19. | All discovery shall be completed by | 16 months from the Court's ruling on the Motion to Dismiss | 4 weeks after Defendants' deadline to serve expert reports |

9

| 20. | Motions for joinder of parties and amendments to the pleadings shall be filed on or before | 17 months from the Court's ruling on the Motion to Dismiss | 3 months from the Court's ruling on the Motion to Dismiss. |
|---|---|---|---|
| 21. | Motions, including summary judgment motions but excluding motions relating to the conduct of the trial, shall be filed on or before | 22 months from the Court's ruling on the Motion to Dismiss | 8 weeks from the close of expert discovery |
| 22. | This case shall be ready for trial by | At the Court's convenience | At the Court's convenience |

Dated: December 26, 2022

STRIS & MAHER LLP

By: /s/ Michael Donofrio
    Counsel for Plaintiff(s)

DOWNS RACHLIN MARTIN PLLC

By: /s/ Matthew S. Borick
    Counsel for Defendant(s)

**APPROVED and SO ORDERED:**        /s/ Geoffrey W. Crawford
                                    Chief Judge
                                    U.S. DistrictCourt
Date: 27 December 2022