U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2023 MAR -2  PH 12: 06

CLERK

BY_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF VERMONT and THE VERMONT HEALTH PLAN, <br> *Plaintiffs*, <br><br> v. <br><br> TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., TEVA SALES AND MARKETING, INC., and TEVA NEUROSCIENCE, INC., <br><br> *Defendants*. | Civil Action No. **5:22-cv-00159** |

## ELECTRONICALLY STORED INFORMATION PROTOCOL

WHEREAS, the above-captioned action, brought by plaintiffs Blue Cross and Blue Shield of Vermont and the Vermont Health Plan ("Plaintiffs") against Teva Pharmaceuticals Industries Ltd., Teva Pharmaceuticals USA, Inc., Teva Neuroscience, Inc., and Teva Sales & Marketing, Inc. (collectively, "Defendants" and together with Plaintiffs, the "Parties") is pending before this Court;

WHEREAS, the Parties have engaged in discussions regarding the format of production of documents and electronically stored information ("ESI") that are responsive to requests made by the Parties;

WHEREAS, Counsel for the Parties agree to meet and confer regarding custodians to be searched and processes to be employed to collect ESI for production and to work in good faith to avoid unduly burdensome discovery practices and to promote the resolution of disputes regarding discovery of ESI without Court intervention;

IT IS HEREBY STIPULATED AND ORDERED THAT:

ACTIVE/120312462

## I.  DEFINITIONS

    **A.**    "**Documents**" shall have the same definition as set forth in Federal Rule of Civil Procedure 34.

    **B.**    "**Electronically stored information**" or "**ESI**," shall have the same definition as set forth in Federal Rule of Civil Procedure 34.

    **C.**    "**Extracted Text**" means the text extracted from a Document, and includes all header, footer, and document body information when available.

    **D.**    "**Load/Unitization file**" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load/Unitization file will also contain data relevant to the individual Documents, including extracted and user created Metadata, as well as OCR or Extracted Text, should such data be available.

    **E.**    "**Media**" means an object or device, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

    **F.**    "**Metadata**" means (i) information associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage or validity of the electronic file or (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

ACTIVE/120312462

G.    "**Native data format**" means the format of ESI in which such ESI was generated or used by the producing party in the usual course of business and in its regularly conducted activities.

H.    "**OCR File**" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

I.    "**Parties**" means the named plaintiffs and defendants in the above captioned matter, as well as any later-added plaintiffs and defendants.

J.    "**Non-party**" means any entity not included in the caption to this matter.

K.    "**Protected Data**" means any information that a party believes to be subject to federal, state, or foreign data protection laws or other personally identifiable information or sensitive healthcare information.

L.    "**Static Image**" means a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format (TIFF) image is an example of a Static Image.

## II.    SEARCH PROTOCOL FOR ELECTRONIC DOCUMENTS

The Parties agree that they will cooperate with the express objective of reasonably meeting each Party's discovery requirements under the Federal Rules of Civil Procedure, Local Civil Rules, Orders of this Court, and applicable decisional authority while at the same time reducing discovery burdens on the Parties.

### A.  Types of ESI To Be Searched And Produced

The Parties agree that for their respective productions the following types of reasonably available ESI will be searched and produced:

-3-

- Electronic Messaging/E-Mail contained in cloud or physical server sources (e.g., Office 365/Online Outlook, Google Workspace, Lotus Domino, .NSF or Microsoft Exchange .EDB);

- Word-processed documents (e.g., Word, WordPerfect, or Google Doc files and drafts);

- Content stored on share sites/cloud storage (e.g., Box, Dropbox, Google Drive, Microsoft OneDrive, SharePoint, or ShareFile);

- Instant messaging or other real-time, transitory text transmissions that potentially responsive custodians utilized in the ordinary course of business;

- Collaboration Platforms (e.g., Microsoft Teams, Slack, Zoom Chat, Google Site, etc.);

- Spreadsheets and tables (e.g., Excel, Google Sheets, or Lotus 123 worksheets);

- Image Files (e.g., .PDF, .TIFF, .JPG, .GIF images);

- Presentations (e.g., PowerPoint, Google Slides, Corel Presentations);

- Structured data as provided in Section V.J; and

- Potentially responsive user-created files not covered by the list above that are agreed to among the Parties.

While the Parties agree these types of ESI will be produced, the Parties reserve the right to request production of other types of ESI upon a showing of cause.

The Parties agree that the following categories of ESI are not reasonably accessible and that their collection of ESI to satisfy their discovery obligations in this litigation can exclude the following categories:

- "deleted," slack," "fragmented," or "unallocated" data on hard drives;

ACTIVE/120312462

- random access memory (RAM) or other ephemeral data;

- on-line access data such as temporary internet files, history, cache, cookies, etc.;

- data in metadata fields that are frequently updated automatically, such as last-opened dates;

- backup tapes or systems that are not sole source repositories;

- electronic data (e.g., email, calendars, contacts, notes, and text messages) sent to or from mobile devices (e.g., Android, BlackBerry, iPhone, and iPad devices), provided that a copy of such electronic data is automatically synchronized and saved to a central physical or cloud server;

- server, system, or network logs;

- legacy data from systems no longer in use that is unintelligible on systems;

- electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report; and

If a Party notifies another Party in writing that it believes that production of any form of ESI listed above is reasonably necessary, the Parties shall meet and confer regarding whether that discovery should be had. If the Parties cannot reach a resolution, either Party may seek resolution by this Court pursuant to the applicable rules.

**B. Protocol For Agreeing on Certain Sources of Information to Be Searched**

(i)  Notwithstanding its obligation to preserve all Documents and ESI that can potentially be relevant, in order to reduce the burden of searching the files of individuals only tangentially related to the subject matter of the claims and defenses in this litigation without overlooking production of relevant and responsive documents, the Parties will meet and confer to agree as to

-5-

which individual custodian files and non-custodial files shall be searched ("**Agreed Sources**") and the date ranges for such search(es). The Parties agree to identify all of their own proposed individual custodians and non-custodial source/departmental files reasonably likely to have information that is relevant and proportional to the needs of the case no later than 30 days after the Court's ruling on Teva's motions to dismiss. At that time, each party shall provide each proposed custodian's employment time frame, titles for the time frame, and department for each time frame, to aid in the selection of custodians. The Parties shall also provide non-custodial source locations to be searched, including department, group, and companywide files not associated to an individual custodian. No later than 45 days after the Court's ruling on Teva's motions to dismiss, the Parties shall meet and confer regarding the proposed custodians and non-custodial sources for search and production with the goal of reaching agreement on the Agreed Sources. The Parties shall continue to meet and confer regarding the Agreed Sources as necessary thereafter.

(ii) For the Agreed Sources, the parties shall search and produce responsive documents consistent with the deadlines set forth in the forthcoming Pretrial Scheduling Order, or as otherwise indicated by the Court.

(iii) To the extent the Parties use search terms or alternative search methodologies with respect to the review and production of ESI, they shall meet and confer in good faith regarding the search methodology, including the proposed search terms to be applied to the Agreed Sources, consistent with the provisions of Sections C and D *infra*. The Parties will meet and confer regarding testing and sampling methodology and results.

(iv) Provided, however, that if a party wishes to rely on one of its own non-public documents for the purposes of summary judgment or trial, the document must come from an Agreed Source, or any other party may request the party relying on such a document to search and produce

responsive documents from that individual or departmental custodian and/or make the custodian available for deposition. The producing party may object to such request to search and produce responsive documents from that individual or departmental custodian and/or make the custodian available for deposition.  The parties reserve their rights as discovery unfolds to seek the production of documents from additional individual or departmental custodians should it become apparent such additional custodians possess information relevant to the claims or defenses in this case and such information is not held by the Agreed Sources. To the extent a party's additional document requests may require the search of additional individual and departmental custodians the Parties will meet and confer regarding the addition of any individual or departmental custodians as necessary and appropriate. The Party seeking to obtain discovery from additional individual or departmental custodians shall bear the burden of establishing good cause for the additional discovery.

(v) If the Parties are unable to reach agreement on the Agreed Sources, the issue can be resolved by the Court.

**C. Search Terms**

The following provisions shall apply if search terms are required to identify potentially responsive documents. No later than 45 days after the Court's ruling on Teva's motions to dismiss, the parties will meet and confer and agree upon the schedule for the following steps:

- A date by which the Parties shall exchange lists of proposed search terms, which shall contain all search terms that each Party believes would lead to the identification of relevant documents.

- A date by which the Parties shall exchange lists of any additional search terms that they believe are necessary to identify responsive documents.  To the extent reasonably

-7-

possible, search terms will be crafted with input from the Producing Party's Custodians
in order to identify appropriate nomenclature, code words, etc.

- A date by which the Parties shall meet and confer regarding the proposed search terms.
- A date by which the Parties agree to use best efforts to reach agreement on initial,
  preliminary sets of search terms (the "Preliminary Search Terms").

Within two (2) days of finalizing the list of Preliminary Search Terms, each Party shall
proceed with the application of the Preliminary Search Terms to all Agreed Sources, including all
related metadata. All queries will be run in a non-case-sensitive manner, except as otherwise
specifically provided in the Preliminary Search Term lists. Within seven (7) days of applying the
list of Preliminary Search Terms to all Agreed Sources, the Parties shall exchange search term hit
lists that includes the number of documents that hit on each term, the number of documents with
family or group items that result from the term, and the number of unique hits on each term if
available on the search platform. The Parties reserve the right to object to the use of one or more of
the Preliminary Search Terms based on Federal Rule of Civil Procedure 26(b)(1) and applicable
caselaw. Upon such objection, the Parties shall promptly meet and confer regarding modifications
to the set of Preliminary Search Terms. Objections will be supported by information sufficient for
the non-objecting Party to assess the claim of burden. For any proposed search terms that are not
agreed to (the "Disputed Terms"), the Parties shall use best efforts to promptly meet and confer
regarding any disputes. Techniques such as sampling may be utilized in order to resolve any
disagreements on particular terms in an informed manner. If Disputed Terms still exist at the end
of the meet and confer process, the Parties will submit those terms to the Court in the form of a joint
discovery letter with a discussion of the relevance and/or burden associated with those search terms.
Such letter, if necessary, shall be submitted within ten (10) days of the completion of the meet and

-8-

confer process.  The Producing Party's portion of the letter is due to the Receiving Party within four (4) days of the completion of the meet and confer process, and the Receiving Party's portion is due to the Producing Party four (4) days thereafter, with the remaining two days to be used for resolving any differences and finalizing the letter.

### D.  Use of Technology Assisted Review ("TAR")

The use of search terms will not preclude the Parties' use of other reasonable review tools, including, but not limited to, analytics, predictive coding, and other technology assisted review. Prior to the use of any TAR, the Parties shall meet and confer to disclose and discuss any proposed use of technologies to reduce the number of documents to be reviewed or produced.  Use of these technologies to reduce the reviewable collection or production, other than as described within this Protocol, requires the consent of the receiving Party and a separate agreement governing the use of TAR between the Parties.

### E.  Email Threading

Each Party may utilize email threading.  Only the final-in-time email need be produced, provided that all content in previous emails, including attachments, is contained within the final message such that no unique content is removed as a result of the threading process.  For avoidance of doubt, if a thread member contains any additional data that is not contained in the final-in-time email (including without limitation attachments or BCC recipients), it must be separately produced. Where a final-in-time email is produced, the producing party will include a metadata field combining the following metadata fields to the extent they are available for each of the earlier thread members fully contained with the final-in-time email: Sender, Recipient, CC, and BCC. The parties shall meet and confer regarding any reasonable requests to produce other emails in the thread.

-9-

**F. Embedded Documents**

Embedded ESI documents (e.g., a spreadsheet embedded within a word processing document) will be extracted, produced as independent document records, and related back to the respective top-level parent document (e.g., standalone file, email message, etc.) via the "BegAttach" and "EndAttach" fields referenced in V.H below.  Related documents will be produced within a continuous Bates range. Inline images within an email shall not be treated as an embedded object. The parties agree that logos shall not be extracted and produced as separate documents.

**G. General Provisions**

Except as specifically provided herein, nothing in this protocol shall operate to limit a Party's rights, obligations, and responsibilities under the Federal Rules of Civil Procedure, Local Civil Rules, Orders of this Court, and applicable decisional authority. This protocol is without prejudice to a Party's right to request additional ESI or information if it can demonstrate that the requested ESI or information is relevant and not unreasonably cumulative of ESI and information already produced. The other Party can object to the scope of the additional ESI or information sought pursuant to the Federal Rules of Civil Procedure 26(b)(1) and applicable caselaw.

This ESI protocol does not address or resolve any other objection to the scope of the Parties' respective discovery requests or waive any objections to discovery or admissibility, or any other privileges or immunities.

This protocol does not prevent any Party from undertaking searches of its own ESI for its own purposes at any time.

Nothing in this ESI Protocol prevents a Party from reviewing and analyzing information identified by search terms or TAR to determine whether that information is responsive to a request

-10-

for production and withholding documents determined to be non-responsive.  Further, the mere

fact that a document is hit or captured by the application of any agreed upon search terms does not

mean that such document is necessarily responsive to any propounded discovery request or is

otherwise relevant to this litigation. Relevant documents or categories of documents that are known

to be responsive or that are easily identifiable and segregable shall be collected without the use of

search terms. Determinations of discoverability, responsiveness and privilege shall be made by the

producing Party.

Each Party reserves the right to challenge the sufficiency of a producing Party's production.

If the Parties cannot reach agreement, any dispute may be presented to the Court.  By allowing a

Party the right to reserve its objection no Party is agreeing, either explicitly or implicitly, that such

objections are legitimate.

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this ESI

Protocol with the subpoena and state that the Parties to the Action have requested that the third

party produce documents in accordance with the specifications set forth herein.  The Issuing Party

shall produce any documents obtained pursuant to a third-party subpoena to all other Parties.

Nothing in this ESI Protocol is intended or may be interpreted to narrow, expand, or otherwise

affect the rights of the Parties or third parties to object to a subpoena.

The Parties reserve the right to modify any practice or procedure set forth herein by mutual

agreement.

## III.   PRIVILEGE LOGS

The Parties agree the following privileged communications or documents need not be included

in a privilege log: (a) any communications between a Party (or its employees, agents, and

representatives) and that Party's counsel relating to this Action and created on or after the day the

-11-

complaint was filed in the *Mylan Pharmaceuticals Inc. v. Teva Pharm. Industries Ltd. et al.*, 2:21-cv-13087 (D.N.J.) (June 29, 2021); (b) any work product of counsel relating to this Action; (c) any internal communications within a law firm relating to this Action (or among different law firms representing the same clients in this Action); and (d) any communications regarding litigation holds or preservation, collection, or review in direct connection with this Action.

With respect to other documents withheld based on a claim of privilege, each producing Party will serve a "Hybrid Categorical Privilege Log." For any document withheld under a claim of privilege, the producing Party will provide a log with the following information:

a.  Extracted metadata (CUSTODIAN, DEDUPCUSTODIANS, SUBJECT, TITLE, DATESENT, TO, FROM, CC, BCC, AUTHOR, FILENAME, DATEMOD, DATECREATED, and FILETYPE) to the extent it is applicable and/or reasonably available for the ESI being withheld and does not reflect the privileged and protected information;

b.  Attorneys in the TO, FROM, CC and BCC metadata fields shall be identified by using symbols, such as an asterisk, within the log itself;

c.  A listing of the privilege source for each entry if not apparent in the TO, FROM, CC and BCC fields;

d.  A listing of any and all applicable categories from the predetermined and agreed upon privilege category descriptions; and

e.  The type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.).

The Parties shall meet and confer on the scope of agreed-upon privilege category descriptions. After the receipt of a privilege log (which shall be produced in Native Excel format), any Party may dispute a claim of privilege; however, prior to any submission to the Court for an *in camera* review, the Party disputing a claim of privilege shall meet and confer with the opposing Party to identify the documents for which it questions the claim of privilege and the reasons for its assertion that the documents are not privileged. Documents with the same reasons for assertion of

-12-

non-privilege may be grouped.  If agreement cannot be reached within ten court days following

the meet and confer, any party may request an *in camera* review of the discovery material under

seal by the Court for a determination as to privilege.

### IV. FORMAT OF PRODUCTION

**A. Document Image Format**. With the exception of (i) databases discussed in Section

V.J, (ii) ESI discussed in Section V.B, and (iii) prior production sets discussed in Section V.K

below or unless otherwise agreed to in writing by a requesting Party, at the cost of the producing

Party, non-reimbursable and non-taxable pursuant to 28 U.S.C.§ 1920 or any other cost-recovery

provision, ESI must be produced electronically as a single-page 1-BIT Black & White GROUP

IV "TIFF" no less than 300DPI image where the original document was in black and white or a

Color Medium Quality JPEG where the original document was in color and where the color

contributes to meaning, context, or content of the document. In addition, the producing Party will

honor reasonable requests made in good faith for either the production of the original document

for inspection and copying or production of a color image of the document. In all cases the image

must reflect how the source document would have appeared if printed out to a printer attached to

a computer viewing the file. Provided, however, that, if a producing Party has (a) reasonably

notified a requesting Party in writing that it objects on proportionality grounds to the production

of certain documents, (b) reasonably identified the basis and scope of its proportionality claim

supported by the FRCP and applicable caselaw, and (c) reasonably identified the need to convert

such documents to "TIFF" format and the proportionality factors that conversion would entail,

then the producing party will not be precluded from seeking an agreement or court order available

to a claim of proportionality; and further provided that no Party shall be precluded from seeking

recovery or taxation of costs for conversion to "TIFF" format of documents that the party can

-13-

establish could not be proportionally produced as an initial matter in their native file formats. Nothing in this Section or the remainder of this protocol precludes the requesting Party from opposing any applications for shifting of costs.

(i)     When processing ESI for review and for production in TIFF format, the producing Party, when available in the processing software, shall force off Auto Date and force on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments. Forcing on hidden columns or rows, hidden worksheets, speaker notes, track changes, and comments shall have the effect of making these items visible in the produced image file.

(ii)    When processing ESI, EST should be selected as the time zone and the producing Party will note the time zone used in its processing. To the extent that a Party has already processed ESI using a different time zone, the producing Party will note the time zone used in its processing. Otherwise, the Parties shall consistently produce all ESI processed using the same time zone. When a metadata field includes a date, the date shall be provided in the format defined in Section V.H below.

(iii)   The Parties shall meet and confer to the extent reasonably necessary to facilitate the import and use of the produced materials with commercially available document management or litigation support software.

(iv)    If a document is redacted, the extracted text shall not be delivered for that document but rather OCR output will be delivered based on the redacted images to the extent reasonably feasible.

(v)     Protected Data constitutes highly sensitive materials requiring special protection. Examples of such data protection laws include but are not limited to The Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq. (financial information); The Health Insurance Portability and

-14-

Accountability Act and the regulations thereunder, 45 CFR Part 160 and Subparts A and E of Part 164 (medical information); the Privacy Protection Act, 1981 (Israel personal information); the General Data Protection Regulation (EU) 2016/679 (GDPR)   (European Union personal information); the Data Protection Act 2018 (DPA'18) (United Kingdom personal information); the German Federal Data Protection Act of 2017 (amended to implement the GDPR, amended again in 2019) (Germany personal information); the Belgian Privacy Act of 2018 (supplementing the GDPR) (Belgium personal information); Personal Information Protection and Electronic Documents Act (PIPEDA), S.C. 2000, c. 5 (Canada personal information); The Federal Law on Protection of Personal Data held by Private Parties (published July 5, 2010) (Mexico personal information); and The Personal Information Protection Act (Law No. 57 of 2003), amended 2020 (Japan personal information).

(vi)   The producing Party may redact Protected Data unless such information relates to the requesting Party or relates to or identifies an individual named as a Party. The Parties need not log documents redacted for Protected Data on a log, provided the reason for the redaction appears on the redaction label (e.g. "Redacted - Protected Data", etc.). The producing Party will not deny reasonable requests for more information regarding the reasons for any redactions, and the Parties reserve their right to request a redaction log from a producing Party should they conclude in good faith that one is necessary to understand the meaning for redactions. Such requests shall be made on a document by document basis.  The Parties will meet and confer regarding any objections by the requesting Party to the producing Party's redactions of Protected Data, including whether the producing Party must produce a redaction log.  If the Parties are unable to reach an agreement on redactions of Protected Data, they must seek further relief from the Court pursuant to Federal Rule of Civil Procedure 26(c), District of Vermont Local Rules, and the Case

-15-

Management Order. The producing Party shall preserve an un-redacted version of the item. Protected Data shall be redacted from any public filing not filed under seal.

**B. Native File Format.** Spreadsheets, presentations, audio, video, and desktop database files (such as Microsoft Access) will be produced in native format. A duplicate of the first page of such documents or a slip sheet placeholder must be produced in TIFF format to facilitate database referencing and Bates and confidentiality stamping. Such duplicate first page or slip sheet placeholder will be endorsed as defined in Section V.E below. The associated Load/Unitization file shall include a link to the native item.

If production in native format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the producing party will honor reasonable requests made in good faith for either the production of the original document for inspection and copying or production of the document in native format within ten (10) business days. Documents that are to be produced in a native format, but that require redactions shall be produced in native format with the relevant portions redacted to the extent possible. The redacted portions will be replaced with the redaction language identified above (e.g. "Redacted – Privilege"). If production in native format is not practicable, the redacted document will be produced in TIFF image format with the relevant portions redacted. The extracted text shall not be delivered for that document, but rather OCR output of a TIFF image or modified native file that has been redacted will be delivered to the extent reasonably feasible. If modification of a native file is required for redaction purposes, metadata information associated with that file should remain unchanged unless it also requires redaction.

**C. Production of Physical Documents**. Documents or records which either were originally generated as or converted into ESI but now only exist in physical hard-copy format, or documents or records that were originally generated in hard-copy format, shall be converted to

-16-

single page image files (at least 300DPI BLACK AND WHITE 1-BIT Group IV Tiff or Medium Quality Color JPEG ) and produced following the same protocols set forth herein or otherwise agreed to by the Parties. All such documents will be produced with an OCR file as outlined in Section V.D below.

**D. Document Unitization**. For files produced as either BLACK AND WHITE 1-BIT Group IV TIFF or Medium Quality Color JPEG images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image files. For documents with affixed notes, the Parties will make reasonable efforts to image and produce such documents first with all notes affixed and second with all notes removed and imaged separately.

The producing Party shall produce a Load/Unitization file for all produced documents in accordance with the following formatting:

### OCR and Extracted Text Files (.TXT Files):

ESI shall be produced with multi-page searchable Extracted Text. For ESI from which text cannot be extracted or for documents redacted for any purpose, OCR will be produced instead. Any such Extracted Text or OCR will be produced on a document level in the following format or a close as possible within the Party's processing software:

- Produce a single text file per document containing all the document's pages
- Pages separated by form feed character (decimal 12, hex 0xC)
- Filenames must be matched bates number in this form:
  <Bates num>.txt
  Where <Bates num> is the BATES number of the first page in the document.

-17-

- Text must be encoded in UTF-8.
- Text files will be located in a directory named "TEXT" that is separate from the TIFF image.

**Images Files:**

- Single page per image
- At least 300DPI Black and White 1_BIT Group IV TIFF and Medium Quality Color JPEG are the default FORMATS
- Filenames for images must be matched bates number in this form:
  <Bates num>.<ext>
  Where <Bates num> is the BATES number of the page, and <ext>
  is the appropriate extension for the image format (.jpg, .tif).

**Load/Unitization Files:**

- "Concordance Default" delimited text file utilizing the following characters:
  - The "comma" delimiter is "" (020)
  - The "quote" delimiter is "þ" (254)
  - The "new line" delimiter is "®" (174)
- First line must contain the column/field names (set forth in Paragraph 1(c) herein)
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8
- OPT OPTICON LOAD FILE with relative pathing to the images file.

Notwithstanding the foregoing, the Parties agree to further meet and confer, as necessary, in advance of any production of documents, and in consultation with their respective vendors, to confirm all Load/Unitization file specifications.

**E. Deduplication**. To the extent that exact duplicate documents (based on MD5 or SHA-1 hash values) reside within a Party's ESI data set, each Party shall produce only a single copy of a responsive document or record ("Single Production Copy"). Exact duplicate shall mean bit-for-

ACTIVE/120312462

bit identicality of the document content. For exact duplicate documents, the producing party will produce the metadata described in Section V.H herein for the Single Production Copy, as well as the ALL Custodian and ALL Filepath metadata that differs for the duplicate document(s). Where an exact duplicate document has attachments, hash values must be identical for both the document-plus-attachment (including associated metadata) as well as for any attachment (including associated metadata) standing alone. If not, any such family must be produced without deduplication of any family member. Similarly, the same criteria shall be applied to duplicate documents that are attachments to a parent document. In the event a document identified as a potential duplicate is an attachment to a parent document, hash values must be identical for the parent-plus-attachment for the documents to be considered duplicate documents. If not, any such family must be produced without deduplication of any family member. The Parties will identify additional custodians who had a copy of the produced document in a metadata field associated with the produced document. The Parties will produce updates to this metadata field as necessary, if it becomes outdated with subsequent productions.

   **F. Bates Numbering and Other Unique Identifiers**. For files produced as Black and White 1-BIT Group IV TIFF and Medium Quality Color JPEG images, each page of a produced document must have a legible, unique page identifier ("Bates Number") electronically endorsed "burned" onto the TIFF or JPEG image in such a manner that information from the source document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the document image unless a document qualifies for confidential treatment pursuant to the terms of a Protective Order entered by this Court in this litigation, or has been redacted. In the case of Confidential Information, as defined in a Protective Order, or redacted materials, a designation must be endorsed "burned" onto the document's image at a location that

-19-

does not obliterate or obscure any information from the source document. Any Party producing ESI in native data format under Section V.B, shall produce a slip sheet in Black and White 1-BIT Group IV TIFF that is endorsed with the Bates number, any applicable confidentiality stamping, and the reference to the location of the native file.

Any Party producing ESI for structured data as provided in Section V.J shall employ one of the following methods for purposes of identification: (1) the ESI shall be placed in a Logical Evidence Container, e.g. a folder that is Bates numbered; or (2) the storage device (i.e., CD, USB, hard drive) containing such files shall be Bates numbered. For (1) and (2), a spreadsheet shall also be contemporaneously produced providing a Bates number and confidentiality designation, if any, corresponding to the hash value of the document.

No Party may attach to any pleading or any correspondence addressed to the Court, Special Master, or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any native format document produced by any Party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing Party, appears on the document.

**G. Production Media**. Documents shall be produced on CD-ROM, DVD, external hard drive (with standard PC compatible interface), .ftp site, or such other readily accessible computer or electronic media as the Parties may hereafter agree upon (the "Production Media"). Each item of Production Media shall bear a label identifying: (1) the producing Party and Production Media volume number, (2) the production date, (3) the Bates number range of the materials contained on such Production Media item, and (4) the type of material on the media (e.g., "Images," "OCR Text," "Native Files" etc.). Each item of Production Media shall be accompanied by a transmittal cover letter identifying the Production Volume Name of each item of Production Media included

-20-

in the production and a list of the Bates ranges of the documents contained in each item of Production Media.

**H. Metadata/ Production Data**. The Parties agree that metadata will be produced for all ESI, whether produced in native or static image formats. The appropriate Load/Unitization file as detailed in Section V.D above will contain the Metadata fields listed below, associated with each electronic document (or their equivalents), to the extent the fields exist as electronic Metadata associated with the original electronic documents or are created as part of the electronic data discovery process. The below list of fields does not create any obligation to create or manually code fields that are not automatically generated by the processing of the ESI, or that do not exist as part of the original Metadata of the document; provided, however, the producing Party must populate the CONFIDENTIAL, SOURCE, and CUSTODIAN fields for all produced ESI, as well as paper Documents converted to electronic form, regardless of whether these fields would be generated during typical processing of such documents. The following list identifies the metadata fields that will be produced (to the extent available):

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| PRODUCTION NUMBER | Beginning and ending production number for a given file/document in separate fields | Email, E-Doc and Other[1] |
| APPLICATION USED TO VIEW/ACCESS | Description of the application used to view or access the file/document | Email, E-Doc and Other |
| BEGINPARENT | Production number of first page of parent | Email, E-Doc and Other |

---

[1] "Other" is defined as documents for which internal metadata is not exchanged, including but not limited to, scanned documents and documents obtained from the internet.

-21-

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| ENDPARENT | Production number of last page of parent | Email, E-Doc and Other |
| BEGATTACH | Production number of first page of attachment | Email, E-Doc and Other |
| ENDATTACH | Production number of last page of last attachment | Email, E-Doc and Other |
| CUSTODIAN | Person, shared file or other source from whom files were collected | Email, E-Doc and Other |
| DEDUPCUSTODIAN | To identify other custodians whose files contained a particular document that was eliminated through exact match HASH value de-duplication provided in list form separated by commas | Email, E-Doc and Other |
| DUPLICATE FILEPATH | Folder locations of documents held by other custodians whose copy of the document was not produced based on exact match HASH value de-duplication. Folder names shall be delimited by semicolons. | Email, E-Doc and Other |
| DOC EXTENSION | File extension | Email and E-Doc |
| HASH VALUE | MD5 Hash Value | E-mail and E-Doc |
| ATTACHNAME | The file name(s) of attachments to a parent document (separated by a semicolon) | Email and E-Doc |
| SUBJECT (for emails) | Email Subject line | E-mail |
| FROM | Email Sender | E-mail |
| TO | Email Recipient | E-mail |
| CC | Email Copyee | E-mail |
| BCC | Email Blind Copyee | E-mail |

-22-

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| RECIPIENTS | Recipients of E-mail | E-mail |
| SENT/DATE AND TIME | Date Sent & Time (MM/DD/YYYY HH:MM) | E-mail |
| RECEIVED DATE AND TIME | Date Received & Time (MM/DD/YYYY HH:MM) | E-mail |
| DATELASTMOD | Date modified & Time (MM/DD/YYYY HH:MM) | E-Doc |
| APP CREATED DATE AND TIME | Date created & Time (MM/DD/YYYY HH:MM) | E-Doc |
| TITLE (for E-Docs) | Any value populated in the Title field of the document properties | E-Doc |
| DOCUMENT SUBJECT | Any value populated in the Subject field of the document properties | E-Doc |
| AUTHOR | Any value populated in the Author field of the document properties | E-Doc |
| APP LAST MODIFIED DATE AND TIME | Date and time last modified | E-Doc |
| LASTMODIFIEDBY | Any value populated in the last modified by field of the document properties | E-Doc |
| ACCESSED DATE AND TIME | Date and time last accessed | E-Doc |
| ITEMTYPE | Identifies whether the file is an email, attachment to email, or loose edoc | E-mail and E-Doc |
| SOURCE | Producing entity name | Email, E-Doc, and Other |
| PAGE COUNT | Page count | Email, E-Doc, and Other |

ACTIVE/120312462

| FIELD NAME | FIELD DESCRIPTION | APPLICABLE FILE TYPE(S) |
|---|---|---|
| PRODUCTION VOLUME NAME | Production volume name in which file/document is produced | Email, E-Doc, and Other |
| LAST PRINT DATE | Date last printed | E-Doc |
| REDACTED (Y/N) | Identifies whether the file was redacted and the redaction type | E-mail, E-Doc, and Other |
| REDACTION REASON | Identifies whether file was redacted as "Privileged" "Non-Responsive" and/or "Otherwise Protected Data" | Email, E-Doc, and Other |
| SLIP-SHEET REASON | Identifies whether slip-sheet was provided as "Privileged" "Non-Responsive" "Native" or "Tech Issue" | Email, E-Doc, and Other |
| CONFIDENTIALITY | Identifies whether the file is designated confidential and designation type | E-mail, E-Doc, and Other |
| ORIGINAL FILE NAME | Original file name | E-Doc |
| FILEPATH | Original file path to the file or e-mailbox folder structure | E-mail and E-Doc |
| NATIVELINK | Path to native file as produced | Native |
| TEXTPATH | Path to OCR or extracted text file | E-mail, E-Doc and Other |

When a metadata field includes a date and/or time, the date and/or time shall be provided in the following format: mm/dd/yyyy HH:mm:ss, as separate fields where possible.

Notwithstanding the foregoing, the Parties will meet and confer in good faith as necessary prior to the production of documents, with technical experts as needed, to clarify or resolve any issues (e.g., definitions of metadata fields, inconsistencies, and burden) concerning the production of metadata.

-24-

**I. Attachments**. Email attachments must be mapped to their parent by the Document or Production number and shall be produced contemporaneously with, sequentially Bates numbered, and immediately following the parent email. BeginAttach and EndAttach fields must be populated for parent documents. The BeginParent and EndParent fields must be populated for attachment documents.

**J. Structured Data**. To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the Parties may meet and confer, with an understanding of which fields are relevant, to attempt to agree upon the sets of data or fields to be included and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting Party or counsel. Upon review of the report(s), the requesting Party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/ or inaccessibility.

**K. Prior Production**. No Party is required to produce documents in a manner inconsistent with this Protocol.  To the extent a response to discovery requires a Party to

provide documents from a production set from a prior litigation, such Party may produce the documents from the production set as they were produced in the prior litigation/investigation, with whatever metadata fields were produced in that litigation and no others. Similarly, to the extent materials that were previously submitted as part of a production to the Federal Trade Commission or state Attorney General are responsive to discovery requests, those documents may be produced as they were produced to those entities, with whatever metadata fields were produced in those

ACTIVE/120312462

submissions and no others. Notwithstanding this provision, the Parties retain the right to object to the production of documents from prior litigation or investigations.

### L. Non-responsive Attachments and Non-responsive Redactions.

#### (i)     Document Families

The terms "parent," "child," and "family" have the meaning conventionally applied in the context of e-discovery. If one document in a document family is responsive and one or more other documents in the same document family are not responsive, only the documents that are responsive need be produced. If one or more document in an email family is responsive, the parent email must be produced along with the responsive child attachments. Any non-responsive documents within families that are not produced shall be replaced with a Bates-stamped slip sheet stating "Non-Responsive Document Withheld."

The Parties shall meet and confer regarding any objections to the withholding of nonresponsive attachments. If the Parties are unable to reach a resolution, any Party may bring the dispute to the Court's attention, in which case the producing Party shall make the withheld attachment available for in camera inspection.

### (ii) Redaction of Non-Responsive Material

To the extent a responsive document contains non-responsive information that is Highly Confidential, as that term is defined in the Discovery Confidentiality Order in this case, the producing Party may redact the Highly Confidential, non-responsive portion(s) of the document provided that the redactions do not obscure the meaning of the relevant portions of the document. All such redactions shall be clearly marked on the face of the documents and shall bear a designation indicating that non-responsive, Highly Confidential material has been redacted.

-26-

The Parties shall meet and confer regarding any objections to redactions of non-responsive material. If the Parties are unable to reach a resolution, either Party may bring the dispute to the Court's attention, in which case the producing Party shall make an unredacted version of the document available for in camera inspection.

### V. OBJECTIONS TO ESI PRODUCTION

**A.** For files produced as Black and White Group IV TIFF or Medium Quality Color JPEG images, documents that present imaging or form production problems shall be promptly identified and disclosed to the requesting party; the producing Party will take reasonable steps to resolve the problem. If it is not resolved within ten (10) business days, the Parties shall then meet and confer to attempt to resolve the problems.

**B.** If either Party objects to producing the requested ESI on the grounds that such information is not reasonably accessible because of undue burden or cost, or because production in the requested format is asserted to be not reasonably accessible because of undue burden or cost, the Party, at or before the time the production is due under the Federal Rules of Civil Procedure, Local Civil Rules, or the Case Management Order, shall describe the nature of the objection with reasonable particularity and indicate whether the producing Party is willing to offer an alternative. The Parties will promptly meet and confer in an attempt to resolve the objections if necessary.

**C.** If in-house or outside counsel for the producing Party learns that after the duty to preserve arose, responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business or not occurring in accordance with the Party's document retention policies, the producing Party shall explain where and when the ESI was last retrievable in its original format, and disclose the

-27-

circumstances surrounding the change in status of that ESI, and whether any backup or copy of such original ESI exists, together with the location and the custodian thereof.

**D.** Nothing in this Protocol shall be interpreted to require disclosure of relevant information or Data that is protected by the attorney-client privilege, common interest privilege, work-product doctrine, or is prohibited from disclosure under any similar law, regulation, rule, court order, or any other applicable privilege or protection. The Parties do not waive any objections to the production, discoverability, or confidentiality of ESI, Hard-Copy Materials or any other discovery materials, including, without limitation, objections regarding the burden, overbreadth or relevance of document requests related to ESI, Hard-Copy Materials or any other discovery materials, or relating to the production of ESI or Hard-Copy Materials in a form specified in this Protocol.

**E.** Except as specifically provided herein, nothing in this protocol shall alter the Parties' respective responsibility to comply with the applicable Federal Rules of Civil Procedure and any applicable Local Rules regarding the collection or production of Data. To the extent additional obligations, restrictions, or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, Local Civil Rules, Orders of this Court, or other applicable law or rules, that law or rule shall govern.

## VI. INCORPORATION OF STIPULATED DISCOVERY CONFIDENTIALITY ORDER

The Stipulated Discovery Confidentiality Order submitted by the Parties on February 27, 2023 and entered by the Court is expressly incorporated herein by reference.

**We hereby consent to the form and entry of this Stipulated Electronically Stored Information Protocol.**

-28-

Dated:  February 27, 2023

Respectfully submitted,

Lynn Lincoln Sarko (*pro hac vice*)
Gretchen Freeman Cappio (*pro hac vice*)
Matthew M. Gerend (*pro hac vice*)
Natida Sribhibhadh (*pro hac vice*)
Sydney Read (*pro hac vice*)
KELLER ROHRBACK LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
mgerend@kellerrohrback.com
natidas@kellerrohrback.com
sread@kellerrohrback.com

Alison E. Chase (*pro hac vice*)
KELLER ROHRBACK L.L.P.
801 Garden Street, Suite 301
Santa Barbara, CA 93101
Tel: (805) 456-1496
achase@kellerrohrback.com

By: /s/ Michael Donofrio

Michael Donofrio
Bridget Asay
STRIS & MAHER LLP
15 East State Street, Suite 2
Montpelier, Vermont 05602
(802) 858-4465
(802) 858-4285
mdonofrio@stris.com
basay@stris.com

Peter Stris (*pro hac vice*)
Elizabeth R. Brannen (*pro hac vice*)
STRIS & MAHER LLP
777 S. Figueroa St., Suite 3850
Los Angeles, CA 90017
(213) 995-6800
pstris@stris.com
ebrannen@stris.com

**_Attorneys for Plaintiffs_**

ACTIVE/120312462

By: /s/ Matthew S. Borick

Matthew S. Borick
DOWNS RACHLIN MARTIN PLLC
Courthouse Plaza
199 Main Street, Suite 600
Burlington, VT 05401
(802) 863-2375
(802) 862- 7512
mborick@drm.com

Christopher T. Holding (*pro hac vice*)
Daryl L. Wiesen *(pro hac vice)*
Alicia Rubio-Spring (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1947
CHolding@goodwinlaw.com
DWiesen@goodwinlaw.com
ARubio-Spring@goodwinlaw.com

Brian T. Burgess (*pro hac vice*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
(202) 346-4000
BBurgess@goodwinlaw.com

*Attorneys for Defendants*

**APPROVED AND SO ORDERED:**

DATED:       2 March 2023

Chief Judge
U.S. District Court, District of Vermont

-30-