UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BLUE CROSS AND BLUE SHIELD OF )
VERMONT and THE VERMONT HEALTH )
PLAN, )
                                                                  )
   Plaintiffs, )
                                                                  )
   v. )   Case No. 5:22-cv-159
                                                                  )
TEVA PHARMACEUTICAL )
INDUSTRIES, LTD., TEVA )
PHARMACEUTICALS USA, INC., TEVA )
SALES & MARKETING, INC., and TEVA )
NEUROSCIENCE, INC., )
                                                                  )
   Defendants. )

**ORDER ON SPECIAL MASTER'S RECOMMENDATION CONCERNING EUROPEAN COMMISSION**
**(Docs. 194, 195)**

By motion to compel dated July 18, 2025, Plaintiffs sought disclosure of documents related to a decision of the European Commission entitled "Case AT.40588—TEVA Copaxone." Plaintiffs sought disclosure of an unredacted copy of the decision. More significantly, they seek production of the documents produced by Teva to the European Commission. (Doc. 194-1.) Teva opposed the motion. (Doc. 194-2.)

On October 16, 2025, the Special Master released a Report and Recommendation largely in support of Plaintiffs' position. She recommended disclosure of the materials, subject to protections under European law for third parties and individuals. (Doc. 194.) This appeal follows. (*See* Doc. 195 (Teva's objection); Doc. 198 (Plaintiffs' opposition to the objection); Doc. 199 (Teva's reply).)

## Background

On October 31, 2024, the European Commission, Directorate-General for Competition, released a comprehensive decision concerning its investigation of allegations that Teva engaged in anti-competitive conduct concerning the distribution of its drug Copaxone. A "provisional non-confidential version" of the ruling is posted on the European Commission website. Comm'n Decision, Case AT.40588 – Teva Copaxone (Eur. Comm'n DG Competition, Oct. 31, 2024), https://ec.europa.eu/competition/antitrust/cases1/202515/AT_40588_6339.pdf [https://perma.cc/4KTP-5PUH].[1] The ruling is nearly 600 pages in length. It describes two types of anti-competitive behavior: misconduct concerning the filing of patent applications in Europe and disparagement of competing pharmaceutical products.

The ruling is both detailed and comprehensive. It is heavily annotated with references to documents supplied by Teva and third parties. In keeping with European privacy laws, the names of individuals are generally redacted. Information concerning Teva's total sales and other proprietary information is redacted. One competitor—a Dutch company called Synthon B.V.—is named and its activities described. Information about other competitors appears to have been redacted.

The ruling imposes a total fine of 462,578 euros. Comm'n Decision at 560. The fine amount includes components from seven European states. The amount attributed to each member is redacted.

---

[1] Teva Pharmaceutical Industries and Teva Pharmaceuticals Europe have since instituted an action in the General Court of the European Union seeking annulment of the Commission's October 2024 decision. *See* Application, Case T-19/25, *Teva Pharm. Indus. v. Eur. Comm'n* (Jan. 15, 2025), https://eur-lex.europa.eu/eli/C/2025/1126/oj. That case remains pending.

2

Both parties have been in contact with staff at the European Commission concerning disclosure of information beyond the provisional non-confidential version already publicly available. The European Commission has advised the parties of its concern about the protection of third parties from discovery as well as the protection of the identities of individuals.

## ANALYSIS

The court agrees fully with the pragmatic and respectful recommendations of the Special Master. These recommendations fully address the concerns of the European Commission in upholding the privacy laws of its member states. They are pragmatic in limiting production to Teva's own documents.

### A.   Potential Relevance

The court is satisfied that the conduct described in the European Commission's ruling is sufficiently like the conduct that the complaint alleges to have occurred in the United States to justify the effort of locating, reviewing and producing the underlying documentation supplied by Teva to the Commission. Broadly speaking, the ruling is hearsay; it is the emails and other documents from Teva that have first-hand evidentiary value.[2] As the Special Master observed, this information may be persuasive on issues of motive and intent. The parallels between the conduct described in the ruling and the acts alleged in the complaint are close enough that they may refute in some degree Teva's account of why it pursued its patent strategy and criticized competing products in the United States.[3]

---

[2] The court uses "hearsay" in the general sense of second-hand information. It intends no ruling on the admissibility of the ruling as a public record or through some other provision of the rules of evidence.

[3] The court acknowledges Teva's assertion that the European Commission faulted Teva Europe for strategically withdrawing divisional patents, and thus the European Commission's theory was that Teva Europe "was not aggressive enough," which Teva describes as the opposite

3

## B.     Burden and Proportionality

Teva faults the Special Master for failing to "meaningfully grapple with the outsize burden of the proposed discovery." (Doc. 195 at 6.) According to Teva, compliance would require Teva to review nearly 3,000 documents for privilege and to "collect and review thousands of documents from Teva Europe's counsel, redact the EC Decision and Teva's submissions to the EC, *and* coordinate with the EC to approve those redactions." (*Id.*) Plaintiffs maintain that compliance is not overly burdensome "[i]n the context of this lawsuit"; that Teva's "privilege" argument fails because it is "not at all clear that Teva can assert privilege over any document relied upon by the EC"; and that the Special Master's Recommendation "accommodates the *only* concern the EC expressed: protection of nonpublic third-party information." (Doc. 198 at 5–6.)

The parties in this case have the advantage of the collection and review of the documents already submitted to the European Commission. Teva is likely to have an index of what it provided. There is no suggestion that the documents must be re-discovered through a new search of Teva's records. Rather, what the Special Master recommended was the production of materials already identified as relevant to issues of anti-competitive behavior. The court agrees with Plaintiffs that, in the context of this case, the additional burden is not disproportionate. The court reaches the same conclusion as to the burden of any privilege review that Teva may need to perform.

---

of Plaintiffs' claims in this case that Teva's litigation was "too aggressive." (Doc. 195 at 4.) Teva's alleged statements in Europe regarding the compositional differences between Copaxone and Synthon's generic GA product also differ from the allegations in this case, at least in some respects. (*See id.* at 5.) However, while Teva's alleged conduct on the two continents differed in its details, the court is persuaded that the information Plaintiffs seek is sufficiently relevant to motive and intent in this case.

4

Finally, as to the potential burden on the Commission itself, Plaintiffs assert that "all Teva has to do is leave [nonpublic third-party information] redacted, unredact information about Teva, and have the EC's representatives review to confirm the scope of the redaction." (Doc. 198 at 6.) Plaintiffs represent that the EC is "willing to do so." (*Id.* at 6 & n.7.) In reply, Teva asserts that EC review would not be limited to Teva's proposed redactions to the Commission's Decision itself, but would also extend to all of Teva's defensive submissions and replies to the EC. (Doc. 199 at 2.) And as to the Commission's willingness to perform a review, Teva maintains that this is only because the Special Master's Recommendation gives the EC "no choice." (*Id.*) In Teva's view, "combing through voluminous cited material—not to mention the nearly 700-page decision—will require a massive investment of time." (*Id.* at 3.)

The parties and the court would benefit from a discussion focused on making this review as efficient as possible. The court will schedule a hearing to discuss that issue. Any resulting delay will not change the deadlines currently in place for addressing the question of class certification.

### C.     Comity

The court fully respects the authority of the European Commission to enforce its own laws in working with the parties to produce materials supplied in the course of its investigation and decision-making procedures. The court adopts the Special Master's recommendation that documents shall not be produced in violation of the directions of the European Commission. The principal area of disagreement is likely to be the identity of Teva employees who sent or received emails and other communications concerning alleged anti-competitive acts. Documents produced by third-party companies are a second concern. The court anticipates that staff at the

5

European Commission will address these issues—and others not anticipated today—as they work with the parties to complete production in this case.

## Conclusion

The court ADOPTS the recommendations of the Special Master (Doc. 194) concerning production of documents supplied by Teva to the European Commission. Teva's Objection (Doc. 195) is OVERRULED. The court will schedule a hearing to formulate a plan with the parties to ensure that the necessary review is as efficient as possible.

Dated at Burlington, in the District of Vermont, this 21st day of January, 2026.

Geoffrey W. Crawford, Judge
United States District Court