**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | | |
|---|---|---|
| BLUE CROSS AND BLUE SHIELD OF VERMONT and THE VERMONT HEALTH PLAN, | x x x x | Case Number 5:22-cv-00159 |
| *Plaintiffs,* | x x | |
| v. | x x | |
| TEVA PHARMACEUTICAL INDUSTRIES LTD., TEVA PHARMACEUTICALS USA, INC., TEVA SALES AND MARKETING INC., and TEVA NEUROSCIENCE, INC., | x x x x x | |
| *Defendants.* | x | |

## SPECIAL MASTER'S RECOMMENDATION REGARDING PLAINTIFFS' MOTION TO COMPEL PRODUCTION PURSUANT TO THE CRIME-FRAUD EXCEPTION

Plaintiffs seek to compel production of documents designated as privileged pursuant to the crime-fraud exception. In an April 24, 2026 Recommendation, the Special Master concluded that the standard for *in camera* review had been met for one set of documents, relating to the serial petitioning claims based on the Citizens Petitions ("CPs"). The Special Master has completed that *in camera* review and now recommends that the Motion to Compel be denied.

### 1. Legal Standard

The crime-fraud exception applies where a party "demonstrate[s] that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed—or has been attempted—and that the communications in question were in furtherance of the fraud or crime." *Amusement Industry, Inc. v. Stern*, 293 F.R.D. 420, 426 (S.D.N.Y. 2013) (internal quotation marks omitted). The party seeking to pierce the privilege should demonstrate a "substantial reason" to believe that the party seeking to preserve the privilege "engaged in or attempted to commit a fraud and used communications with [its] attorney to do so." *Sec. Inv.*

*Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 107 (S.D.N.Y. 2017). "[T]he fraudulent nature of the objective need not be established definitively; there need only be a reasonable basis for believing that the objective was fraudulent." *In re Grand Jury Subpoena dated Sept. 15, 1983*, 731 F.2d 1032, 1039 (2d Cir. 1984).

The Second Circuit addressed the standard for the crime-fraud exception in relation to sham litigation in *In re Richard Roe*, 168 F.3d 69 (2d Cir. 1999). The Court acknowledged that a broad reading of the requirement that the communications be "in furtherance of fraud" in the context of sham litigation could result in a sweeping waiver of the privilege:

> If (as the government argues) there is probable cause that a fraud has been committed that consists, at least partially, of engaging in litigation, then probable cause would arguably exist to find that every document prepared in connection with the defense of that litigation was in furtherance of the fraud and thus not privileged.

*Id.* at 71. In other words, if sham litigation is the fraud, then every communication about that litigation could theoretically be "in furtherance" of the fraud.

*Roe* made clear that, in these scenarios, the crime-fraud exception should not swallow every communication relating to litigation that has been alleged to be a sham. *Id.* ("[Exceptions to the privilege] should not be framed so broadly as to vitiate much of the protection they afford."). The Court noted that documents might be discoverable where "a client's directing an attorney to make large numbers of motions solely for purposes of delay" or "where a party suborns perjury by a witness to bolster a claim or defense." *Id.* But "garden variety remarks that one would find in any defense file," such as "documents [] reflect[ing] varying degrees of optimism or pessimism over particular issues and the ultimate outcome of the case," are not discoverable. *Id.* at 72. (In *Roe*, the Court did not ultimately address the question of whether the communications were "in furtherance of" the fraud, because they determined that there was not

probable cause to suspect a fraud was committed. *Id.* ("[T]he defense of the underlying litigation hardly lacked any legal or factual basis.").)

Other circuits have expanded on what it means for a communication to be "in furtherance of" a fraud. The exception does not extend to communications that "merely relate to the crime or fraud" or "merely opine[ ] on the lawfulness of a particular course of conduct." *In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014); *In re Abbott Lab'ys*, 96 F.4th 371, 383 (3d Cir. 2024). To satisfy the "in furtherance of" element of the crime-fraud exception, "a logical link must exist between the privileged communication and the proposed crime or fraud." *In re Neurontin Antitrust Litig.*, 801 F. Supp. 2d 304, 309-10 (D.N.J. 2011). That is, the legal advice "must relate to future illicit conduct by the client; it [must be] the causa pro causa, the advice that leads to the deed." *Haines v. Ligget Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992). Further, "[i]t does not suffice that the communications may be related to a crime; . . . they must actually have been made with an intent to further an unlawful act." *United States v. White*, 887 F.2d 267, 271 (D.C. Cir. 1989). "[A] mere statement of the intent to commit a crime or fraud [does not] trigger the crime-fraud exception to the attorney-client privilege." *Newman v. State*, 863 A.2d 321, 335 (Md. 2004) (citing *Roe*).

### 2. Application

Assuming the evidence is sufficient to support probable cause of a fraud with respect to serial petitioning (a conclusion which the Special Master does not reach), the communications reviewed *in camera* are privileged because they were not made "in furtherance of the fraud." This analysis will be kept at a high-level considering the privileged nature of the documents, which have not been disclosed to Plaintiffs.

First, a significant number of the emails are simply transmittals, asking for or incorporating edits that relate to particular aspects of the CPs. They do not include any discussion of the merits or the motivations for filing. These are not emails that reflect, for example, that the lawyers were making edits or providing advice to pursue sham litigation or attempting to conceal it. They "relate" to the filing of the CPs, but they do not further the alleged fraudulent act—at least in any way beyond the general idea that all communications about the CPs technically "furthered" their filing (an expansive view of "in furtherance of" that *Roe* rejected).

Some of the emails discuss varying degrees of optimism as to the CPs, provide legal opinions addressing potential ramifications of the filings, or offer legal advice about the standards for showing potentially applicable legal risk. This commentary is the type of "remarks that one would find in any defense file" and reflects exactly the type of advice you would expect from an in-house lawyer to their business colleagues. *Roe*, 168 F.3d at 71. There is no advice offered that might have helped further an alleged fraud such as advice about how Defendants might use CPs to delay generic entry or the likelihood that a CP filing would in fact delay generic approval. These emails do not include instructions from the client to file a CP even though it has no merit, or instructions that delay should be sought by filing CPs. They do not "show in-house counsel's focus on research related to pursuing sham litigation" or similar conversations which would constitute "advice that leads to the deed." *In re Abbott Lab'ys*, 96 F.4th 371, 383–85 (3d Cir. 2024); *Haines*, 975 F.2d at 90. They relate to the CPs, without seeking or rendering advice in furtherance of the alleged fraud of serial petitioning.

To the extent the emails relay commentary from non-lawyers about the viability of the CPs, that commentary is not "in furtherance of the fraud." *Newman*, 863 A.2d at 335. While

those communications might be relevant to the question of motive, "[i]t does not suffice that the communications may be related to a crime; . . . they must actually have been made with an intent to further an unlawful act" with the help of a lawyer's advice. *White*, 887 F.2d at 271.

In conclusion, I recommend that Plaintiffs' Motion to Compel Production of Documents Pursuant to the Crime-Fraud Exception be denied.

/s/ *Hannah C. Waite*
Hannah C. Waite
Special Discovery Master


DATED this 25th day of June, 2026.